JINA L. CHOI (Admitted to the New York Bar)
MICHAEL S. DICKE (Cal. Bar No. 158187)
SHEILA E. O'CALLAGHAN (Cal. Bar No. 131032)
  ocallaghans@sec.gov
ROBERT J. DURHAM (Admitted to the New York Bar)
  durhamr@sec.gov

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
44 Montgomery Street, Suite 2800
San Francisco, California 94104
Telephone:  (415) 705-2500
Facsimile:  (415) 705-2501

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. CV12-2663 (EJD) |
| Plaintiff, | |
| vs. | |
| GLR CAPITAL MANAGEMENT, LLC, GLR ADVISORS, LLC, JOHN A. GERINGER, CHRISTOPHER A. LUCK  and KEITH E. RODE | [PROPOSED] FINAL JUDGEMENT AS TO DEFENDANTS JOHN A. GERINGER AND GLR ADVISORS, LLC |
| Defendants | |
| and | |
| GLR GROWTH FUND, L.P., | |
| Relief Defendant. | |

The Securities and Exchange Commission ("Commission") having filed a Complaint and Defendants John A. Geringer and GLR Advisors, LLC (collectively, "Defendants") having entered a general appearance; consented to the Court's jurisdiction over them and the subject matter of this action; consented to entry of this Final Judgment as to Defendants John A. Geringer and GLR Advisors, LLC ("Final Judgment"); waived findings of fact and conclusions of law; and waived any right to appeal from this Final Judgment:

I.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendants and their agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5], by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:

    (a)    to employ any device, scheme, or artifice to defraud;

    (b)    to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

    (c)    to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

II.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendants and their agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)] in the offer or sale of any security by the use of any means or

1  instruments of transportation or communication in interstate commerce or by use of the mails,

2  directly or indirectly:

3      (a)    to employ any device, scheme, or artifice to defraud;

4      (b)    to obtain money or property by means of any untrue statement of a material fact or any

5          omission of a material fact necessary in order to make the statements made, in light of

6          the circumstances under which they were made, not misleading; or

7      (c)    to engage in any transaction, practice, or course of business which operates or would

8          operate as a fraud or deceit upon the purchaser.

9  III.

10      IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendants

11  and their agents, servants, employees, attorneys, and all persons in active concert or participation

12  with them who receive actual notice of this Final Judgment by personal service or otherwise are

13  permanently restrained and enjoined from violating Sections 206(1) or 206(2) of the Investment

14  Advisers Act of 1940 ("Advisers Act") [15 U.S.C. § 80b-6(l), (2)] by, while acting as an

15  investment adviser, using the mails or any means or instrumentality of interstate commerce:

16      (a)    employing any device, scheme, or artifice to defraud any client or prospective

17          client; or

18      (b)    engaging in any transaction, practice, or course of business which operates as a

19          fraud or deceit upon any client or prospective client.

20  IV.

21      IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendants and

22  their agents, servants, employees, attorneys, and all persons in active concert or participation with

23  them who receive actual notice of this Final Judgment by personal service or otherwise are

24  permanently restrained and enjoined from violating Section 206(4) the Advisers Act [15 U.S.C.

25  § 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. 275.206(4)-8] by, while acting as an investment

26  adviser, using the mails or any means or instrumentality of interstate commerce:

27      (a)  engaging in any act, practice, or course of business which is fraudulent, deceptive, or

28        manipulative; or

1     (b)  while acting as an investment adviser to a pooled investment vehicle:

2          (1) making any untrue statement of a material fact or omitting to state a material fact

3              necessary to make the statements made, in the light of the circumstances under

4              which they were made, not misleading, to any investor or prospective investor in

5              the pooled investment vehicle; or

6          (2) otherwise engaging in any act, practice, or course of business that is fraudulent,

7              deceptive, or manipulative with respect to any investor or prospective investor in

8              the pooled investment vehicle.

9

## V.

10     IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendants and

11 their agents, servants, employees, attorneys, and all persons in active concert or participation with

12 them who receive actual notice of this Final Judgment by personal service or otherwise are

13 permanently restrained and enjoined from violating Section 26 of the Exchange Act [15 U.S.C.

14 § 78z] by making or causing to be made, to any prospective purchaser or seller of a security any

15 representation that any action or failure to act by the Commission or the Board of Governors of the

16 Federal Reserve System, in the administration of the Exchange Act shall be construed to mean that

17 the particular authority has in any way passed upon the merits of, or given approval to, any security

18 or any transaction or transactions therein, or any action or failure to act with regard to any statement

19 or report filed with or examined by such authority pursuant to the Exchange Act or rules and

20 regulations thereunder, be deemed a finding by such authority that such statement or report is true

21 and accurate on its face or that it is not false or misleading.

## VI.

22

23     IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendants are

24 liable, on a joint and several basis, for disgorgement of $2,170,589, representing profits gained as a

25 result of the conduct alleged in the Complaint, together with prejudgment interest thereon in the

26 amount of $601,886, for a total of $2,772,475.  Defendants' payment of disgorgement and

27 prejudgment interest shall be deemed satisfied upon the entry of an order requiring Defendant John

28

1  A. Geringer to pay restitution and/or forfeiture in *United States v. John Geringer*, Crim. No. 12-CR-

2  00888 EJD.

3                                                    VII.

4           IT IS FURTHER ORDERED, ADJUDGED AND DECREED that, solely for purposes of

5  exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. § 523, the

6  allegations in the Complaint are true and admitted by Defendants, and further, any debt for

7  disgorgement, prejudgment interest, civil penalty or other amounts due by Defendants under this

8  Judgment or any other judgment, order, consent order, decree or settlement agreement entered in

9  connection with this proceeding, is a debt for the violation by Defendants of the federal securities

10 laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the

11 Bankruptcy Code, 11 U.S.C. § 523(a)(19).

12                                                  VIII.

13          IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Consents of Defendant

14 John A. Geringer and GLR Advisors, LLC are incorporated herein with the same force and effect as

15 if fully set forth herein, and that Defendants shall comply with all of the undertakings and agreements

16 set forth therein.

17                                                   IX.

18          IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain

19 jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.

20                                                    X.

21          There being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil

22 Procedure, the Clerk is ordered to enter this Final Judgment forthwith and without further notice.

23 Dated: _ February 3, 2015

24

25                                          _____
                                            UNITED STATES DISTRICT JUDGE
26                                            EDWARD J. DAVILA

27

28

1  JINA L. CHOI (Admitted in New York)
   MICHAEL S. DICKE (Cal. Bar No. 158187)
2  SHEILA E. O'CALLAGHAN (Cal. Bar No. 131032)
     ocallaghans@sec.gov
3  ROBERT J. DURHAM (Admitted to the New York Bar)
     durhamr@sec.gov
4
   Attorneys for Plaintiff
5  SECURITIES AND EXCHANGE COMMISSION
   44 Montgomery Street, Suite 2800
6  San Francisco, California 94104
   Telephone:  (415) 705-2500
7  Facsimile:  (415) 705-2501

8

9                UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11                   SAN JOSE DIVISION

12

13  SECURITIES AND EXCHANGE COMMISSION,          Case No. CV12-2663 (EJD)

14              Plaintiff,

15       vs.

16  GLR CAPITAL MANAGEMENT, LLC, GLR             **CONSENT OF**
    ADVISORS, LLC, JOHN A. GERINGER,            **JOHN A. GERINGER**
17  CHRISTOPHER A. LUCK and KEITH E. RODE

18              Defendants

19       and

20  GLR GROWTH FUND, L.P.,

21              Relief Defendant.

22

23

24

25

26

27

28

1.     Defendant John A. Geringer ("Defendant") acknowledges having been served with the complaint in this action, enters a general appearance, and admits the Court's jurisdiction over Defendant and over the subject matter of this action.

2.     Defendant has pleaded guilty to criminal conduct relating to certain matters alleged in the complaint in this action. Specifically, in *United States v. John Geringer,* Crim. No. 12-CR-00888 (EJD), Defendant pleaded guilty to one count of conspiracy to commit mail and wire fraud, one count of mail fraud and one count of securities fraud. In connection with that plea, Defendant admitted the facts set out in the transcript of his plea allocution that is attached as Exhibit A to this Consent. This Consent shall remain in full force and effect regardless of the existence or outcome of any further proceedings in *United States v. John Geringer.*

3.     Defendant hereby consents to the entry of the Final Judgment as to Defendants John A. Geringer and GLR Advisors, LLC in the form attached hereto (the "Final Judgment") and incorporated by reference herein, which, among other things:

        (a)     permanently restrains and enjoins Defendant from violation of Section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a), Sections 10(b) and 26 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b) and 78z, and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5, and Sections 206(1), 206(2), and 206(4) of the Investment Advisers Act of 1940 ("Advisers Act"), 15 U.S.C. §§ 80b-6(1), 80b-6(2), and 80b-6(4), and Rule 206(4)-8 thereunder, 17 C.F.R. § 275.206(4)-8;

        (b)     orders Defendant to pay disgorgement, on a joint and several basis with GLR Advisors, LLC, in the amount of $2,170,589, plus prejudgment interest thereon in the amount of $601,886; and

        (c)     does not impose a civil monetary penalty.

4.     Defendant waives the entry of findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

5.     Defendant waives the right, if any, to a jury trial and to appeal from the entry of the Final Judgment.

6.     Defendant enters into this Consent voluntarily and represents that no threats, offers, promises, or inducements of any kind have been made by the Commission or any member, officer, employee, agent, or representative of the Commission to induce Defendant to enter into this Consent.

7.     Defendant agrees that this Consent shall be incorporated into the Final Judgment with the same force and effect as if fully set forth therein.

8.     Defendant will not oppose the enforcement of the Final Judgment on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waives any objection based thereon.

9.     Defendant waives service of the Final Judgment and agrees that entry of the Final Judgment by the Court and filing with the Clerk of the Court will constitute notice to Defendant of its terms and conditions.  Defendant further agrees to provide counsel for the Commission, within thirty days after the Final Judgment is filed with the Clerk of the Court, with an affidavit or declaration stating that Defendant has received and read a copy of the Final Judgment.

10.     Consistent with 17 C.F.R. 202.5(f), this Consent resolves only the claims asserted against Defendant in this civil proceeding.  Defendant acknowledges that no promise or representation has been made by the Commission or any member, officer, employee, agent, or representative of the Commission with regard to any criminal liability that may have arisen or may arise from the facts underlying this action or immunity from any such criminal liability.  Defendant waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein.  Defendant further acknowledges that the Court's

entry of a permanent injunction may have collateral consequences under federal or state law and the rules and regulations of self-regulatory organizations, licensing boards, and other regulatory organizations. Such collateral consequences include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a member of, a self-regulatory organization. This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding. In addition, in any disciplinary proceeding before the Commission based on the entry of the injunction in this action, Defendant understands that he shall not be permitted to contest the factual allegations of the complaint in this action.

11.     Defendant understands and agrees to comply with the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegations in the complaint or order for proceedings." 17 C.F.R. § 202.5. In compliance with this policy, Defendant agrees: (i) not to take any action or to make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis; and (ii) that upon the filing of this Consent, Defendant hereby withdraws any papers filed in this action to the extent that they deny any allegation in the complaint. If Defendant breaches this agreement, the Commission may petition the Court to vacate the Final Judgment and restore this action to its active docket. Nothing in this paragraph affects Defendant's: (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party.

12.     Defendant hereby waives any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to seek from the United States, or any agency, or any official of the United States acting in his or her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees, expenses, or costs expended by Defendant to defend against this action. For these purposes, Defendant agrees that

1  Defendant is not the prevailing party in this action since the parties have reached a good faith

2  settlement.

3        13.    Defendant agrees that the Commission may present the Final Judgment to the Court

4  for signature and entry without further notice.

5        14.    Defendant agrees that this Court shall retain jurisdiction over this matter for the

6  purpose of enforcing the terms of the Final Judgment.

7

8  Dated: _8/28/14_                      _____

9                                         John A. Geringer

10

11  State of California

12  County of _Santa Cruz_

13  Subscribed and sworn to (or affirmed) before me on this _28_ day of _August_, 2014, by John

14  A. Geringer, proved to me on the basis of satisfactory evidence to be the person who appeared before

15  me.

16  Notary Public Signature _____

17  (Seal)

18

19        SAGAR M. PATEL
          Commission # 2036590
20        Notary Public - California
          Santa Cruz County
          My Comm. Expires Aug 11, 2017

21

22

23

24

25

26

27

28

CONSENT OF JOHN A. GERINGER              4                    CV12-2663 (EJD)

JINA L. CHOI (Admitted to the New York Bar)
MICHAEL S. DICKE (Cal. Bar No. 158187)
SHEILA E. O'CALLAGHAN (Cal. Bar No. 131032)
  ocallaghans@sec.gov
ROBERT J. DURHAM (Admitted to the New York Bar)
  durhamr@sec.gov

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
44 Montgomery Street, Suite 2800
San Francisco, California 94104
Telephone:  (415) 705-2500
Facsimile:  (415) 705-2501

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. CV12-2663 (EJD) |
| Plaintiff, | |
| vs. | |
| GLR CAPITAL MANAGEMENT, LLC, GLR ADVISORS, LLC, JOHN A. GERINGER, CHRISTOPHER A. LUCK  and KEITH E. RODE | [PROPOSED] FINAL JUDGEMENT AS TO DEFENDANTS JOHN A. GERINGER AND GLR ADVISORS, LLC |
| Defendants | |
| and | |
| GLR GROWTH FUND, L.P., | |
| Relief Defendant. | |

1

2        The Securities and Exchange Commission ("Commission") having filed a Complaint and

3   Defendants John A. Geringer and GLR Advisors, LLC (collectively, "Defendants") having entered a

4   general appearance; consented to the Court's jurisdiction over them and the subject matter of this

5   action; consented to entry of this Final Judgment as to Defendants John A. Geringer and GLR

6   Advisors, LLC ("Final Judgment"); waived findings of fact and conclusions of law; and waived any

7   right to appeal from this Final Judgment:

8                                               I.

9        IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendants and their

10  agents, servants, employees, attorneys, and all persons in active concert or participation with them

11  who receive actual notice of this Final Judgment by personal service or otherwise are permanently

12  restrained and enjoined from violating, directly or indirectly, Section 10(b) of the Securities

13  Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated

14  thereunder [17 C.F.R. § 240.10b-5], by using any means or instrumentality of interstate commerce, or

15  of the mails, or of any facility of any national securities exchange, in connection with the purchase or

16  sale of any security:

17        (a)    to employ any device, scheme, or artifice to defraud;

18        (b)    to make any untrue statement of a material fact or to omit to state a material fact

19               necessary in order to make the statements made, in the light of the circumstances

20               under which they were made, not misleading; or

21        (c)    to engage in any act, practice, or course of business which operates or would

22               operate as a fraud or deceit upon any person.

23                                              II.

24        IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendants and

25  their agents, servants, employees, attorneys, and all persons in active concert or participation with

26  them who receive actual notice of this Final Judgment by personal service or otherwise are

27  permanently restrained and enjoined from violating Section 17(a) of the Securities Act of 1933

28  ("Securities Act") [15 U.S.C. § 77q(a)] in the offer or sale of any security by the use of any means or

1    instruments of transportation or communication in interstate commerce or by use of the mails,

2    directly or indirectly:

3         (a)    to employ any device, scheme, or artifice to defraud;

4         (b)    to obtain money or property by means of any untrue statement of a material fact or any

5                omission of a material fact necessary in order to make the statements made, in light of

6                the circumstances under which they were made, not misleading; or

7         (c)    to engage in any transaction, practice, or course of business which operates or would

8                operate as a fraud or deceit upon the purchaser.

9                                        III.

10        IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendants

11   and their agents, servants, employees, attorneys, and all persons in active concert or participation

12   with them who receive actual notice of this Final Judgment by personal service or otherwise are

13   permanently restrained and enjoined from violating Sections 206(1) or 206(2) of the Investment

14   Advisers Act of 1940 ("Advisers Act") [15 U.S.C. § 80b-6(l), (2)] by, while acting as an

15   investment adviser, using the mails or any means or instrumentality of interstate commerce:

16        (a)    employing any device, scheme, or artifice to defraud any client or prospective

17               client; or

18        (b)    engaging in any transaction, practice, or course of business which operates as a

19               fraud or deceit upon any client or prospective client.

20                                        IV.

21        IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendants and

22   their agents, servants, employees, attorneys, and all persons in active concert or participation with

23   them who receive actual notice of this Final Judgment by personal service or otherwise are

24   permanently restrained and enjoined from violating Section 206(4) the Advisers Act [15 U.S.C.

25   § 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. 275.206(4)-8] by, while acting as an investment

26   adviser, using the mails or any means or instrumentality of interstate commerce:

27        (a)    engaging in any act, practice, or course of business which is fraudulent, deceptive, or

28               manipulative; or

(b)   while acting as an investment adviser to a pooled investment vehicle:

(1) making any untrue statement of a material fact or omitting to state a material fact necessary to make the statements made, in the light of the circumstances under which they were made, not misleading, to any investor or prospective investor in the pooled investment vehicle; or

(2) otherwise engaging in any act, practice, or course of business that is fraudulent, deceptive, or manipulative with respect to any investor or prospective investor in the pooled investment vehicle.

V.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendants and their agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating Section 26 of the Exchange Act [15 U.S.C. § 78z] by making or causing to be made, to any prospective purchaser or seller of a security any representation that any action or failure to act by the Commission or the Board of Governors of the Federal Reserve System, in the administration of the Exchange Act shall be construed to mean that the particular authority has in any way passed upon the merits of, or given approval to, any security or any transaction or transactions therein, or any action or failure to act with regard to any statement or report filed with or examined by such authority pursuant to the Exchange Act or rules and regulations thereunder, be deemed a finding by such authority that such statement or report is true and accurate on its face or that it is not false or misleading.

VI.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendants are liable, on a joint and several basis, for disgorgement of $2,170,589, representing profits gained as a result of the conduct alleged in the Complaint, together with prejudgment interest thereon in the amount of $601,886, for a total of $2,772,475.  Defendants' payment of disgorgement and prejudgment interest shall be deemed satisfied upon the entry of an order requiring Defendant John

1   A. Geringer to pay restitution and/or forfeiture in *United States v. John Geringer*, Crim. No. 12-CR-

2   00888 EJD.

3                                        VII.

4           IT IS FURTHER ORDERED, ADJUDGED AND DECREED that, solely for purposes of

5   exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. § 523, the

6   allegations in the Complaint are true and admitted by Defendants, and further, any debt for

7   disgorgement, prejudgment interest, civil penalty or other amounts due by Defendants under this

8   Judgment or any other judgment, order, consent order, decree or settlement agreement entered in

9   connection with this proceeding, is a debt for the violation by Defendants of the federal securities

10  laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the

11  Bankruptcy Code, 11 U.S.C. § 523(a)(19).

12                                       VIII.

13          IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Consents of Defendant

14  John A. Geringer and GLR Advisors, LLC are incorporated herein with the same force and effect as

15  if fully set forth herein, and that Defendants shall comply with all of the undertakings and agreements

16  set forth therein.

17                                        IX.

18          IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain

19  jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.

20

21                                        X.

22          There being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil

23  Procedure, the Clerk is ordered to enter this Final Judgment forthwith and without further notice.

24  Dated: _____, 2014

25                                          _____
                                            UNITED STATES DISTRICT JUDGE
26

27

28

# Exhibit A

```
 1                   UNITED STATES DISTRICT COURT
 2               FOR THE NORTHERN DISTRICT OF CALIFORNIA
                        SAN JOSE DIVISION
 3

 4       UNITED STATES OF AMERICA,

 5                 PLAINTIFF,              CASE NO.  CR-12-0888-EJD

 6           VS.                          SAN JOSE, CALIFORNIA

 7       JOHN GERINGER,                   JUNE 4, 2014

 8                 DEFENDANT.             PAGES 1 - 45

 9

10

11                     TRANSCRIPT OF PROCEEDINGS
               BEFORE THE HONORABLE EDWARD J. DAVILA
12                  UNITED STATES DISTRICT JUDGE

13
                       A-P-P-E-A-R-A-N-C-E-S
14

15       FOR THE PLAINTIFF:    OFFICE OF THE UNITED STATES ATTORNEY
                               BY:   JEFFREY SCHENK
16                             150 ALMADEN BOULEVARD, SUITE 900
                               SAN JOSE, CALIFORNIA 95113
17

18       FOR THE DEFENDANT:    THE LAW OFFICE OF MICHAEL WHELAN, JR.
                               BY:   MICHAEL WHELAN, JR.
19                             803 MARKET STREET, NUMBER 913
                               SAN FRANCISCO, CALIFORNIA 94103
20

21       OFFICIAL COURT REPORTER:    IRENE L. RODRIGUEZ, CSR, CRR
                                     CERTIFICATE NUMBER 8074
22

23           PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY,
         TRANSCRIPT PRODUCED WITH COMPUTER.
24

25
```

```
 1    SAN JOSE, CALIFORNIA                        JUNE 4, 2014

 2                      P R O C E E D I N G S

 3         (COURT CONVENED.)

 4              THE CLERK:  CALLING CASE NUMBER 12-888, UNITED

 5    STATES VERSUS JOHN GERINGER.

 6              MR. WHELAN:  GOOD MORNING, YOUR HONOR.  MICHAEL

 7    WHELAN FOR MR. GERINGER WHO IS PRESENT OUT OF CUSTODY.

 8              THE DEFENDANT:  GOOD MORNING, YOUR HONOR.

 9              THE COURT:  THANK YOU.  GOOD MORNING.

10              MR. SCHENK:  GOOD MORNING, YOUR HONOR.  JEFF SCHENK

11    ON BEHALF OF THE UNITED STATES.

12              THE COURT:  THANK YOU.  GOOD MORNING.  THIS MATTER

13    IS ON CALENDAR THIS MORNING, COUNSEL, FOR I BELIEVE A CHANGE OF

14    PLEA?

15              MR. WHELAN:  CORRECT.

16              MR. SCHENK:  YES, SIR.

17              THE COURT:  ALL RIGHT, SIR.  MR. GERINGER, YOUR

18    LAWYER TELLS ME THAT YOU'RE GOING TO CHANGE YOUR PLEA THIS

19    MORNING.

20         IS THAT WHAT YOU WISH TO DO, SIR?

21              THE DEFENDANT:  YES, YOUR HONOR.

22              THE COURT:  ALL RIGHT.  SIR, WE'LL HAVE A

23    CONVERSATION, YOU AND I WILL HAVE A CONVERSATION ABOUT THAT BUT

24    FIRST A COUPLE OF THINGS.

25              DURING OUR CONVERSATION IF AT ANY TIME YOU WISH TO SPEAK
```

1    PRIVATELY WITH YOUR ATTORNEY, PLEASE LET ME KNOW AND I'LL, OF

2    COURSE, ALLOW YOU TO DO THAT.

3         ALL RIGHT, SIR?

4              THE DEFENDANT:  YES, SIR.

5              THE COURT:  ALSO, SIR, IF AT ANY TIME DURING OUR

6    CONVERSATION YOU DO NOT UNDERSTAND SOMETHING THAT I SAY TO YOU

7    OR YOU WOULD LIKE ME TO REPEAT MYSELF, PLEASE LET ME KNOW AND

8    I'LL BE HAPPY TO ACCOMMODATE THOSE REQUESTS AS WELL.

9         ALL RIGHT, SIR?

10             THE DEFENDANT:  YES, YOUR HONOR.

11             THE COURT:  AND FINALLY, SIR, IN RESPONSE TO MY

12   QUESTIONS I WOULD ASK YOU TO AND INVITE YOU TO ANSWER OUT LOUD

13   IN A RICH VOICE SO THE YOUNG LADY IN FRONT OF US WHO IS

14   TRANSCRIBING THESE PROCEEDINGS CAN ACCURATELY TRANSCRIBE THESE

15   PROCEEDINGS.

16        ALL RIGHT, SIR?

17             THE DEFENDANT:  YES, YOUR HONOR.

18             THE COURT:  ALL RIGHT.  THANK YOU.  IF YOU WILL NOW

19   RAISE YOUR RIGHT HAND, PLEASE, OUR COURTROOM DEPUTY WILL NOW

20   PLACE YOU UNDER OATH.

21        (DEFENDANT WAS GIVEN THE OATH.)

22             THE DEFENDANT:  YES.

23             THE COURT:  THANK YOU, SIR.  ONE FURTHER THING, YOU

24   HAVE JUST TAKEN AN OATH TO TELL THE TRUTH.  IF YOU NOW SAY

25   SOMETHING THAT IS NOT TRUE, YOU MUST UNDERSTAND THAT THE

4

1     GOVERNMENT COULD ENGAGE IN A PROSECUTION AGAINST YOU FOR

2     PROVIDING FALSE INFORMATION.

3         DO YOU UNDERSTAND THAT, SIR?

4            THE DEFENDANT:  YES, YOUR HONOR.

5            THE COURT:  NOW, FIRST OF ALL, SIR, MAY I KNOW YOUR

6     TRUE NAME?

7            THE DEFENDANT:  MY NAME IS JOHN ARNOLD GERINGER.

8            THE COURT:  AND HOW OLD ARE YOU, SIR?

9            THE DEFENDANT:  I'M 49.

10           THE COURT:  AND HOW FAR HAVE YOU GONE IN SCHOOL?

11           THE DEFENDANT:  I COMPLETED A BACHELOR'S DEGREE AND

12    TWO YEARS OF AN MBA PROGRAM.

13           THE COURT:  ARE YOU PRESENTLY, RIGHT NOW, UNDER THE

14    INFLUENCE OF ANY DRUG, ALCOHOL OR MEDICATION?

15           THE DEFENDANT:  NO, YOUR HONOR.

16           THE COURT:  HAVE YOU TAKEN ANY OF THOSE SUBSTANCES

17    WITHIN THE LAST 48 HOURS?

18           THE DEFENDANT:  NO, YOUR HONOR.

19           THE COURT:  DO YOU HAVE A CLEAR MIND THIS MORNING?

20           THE DEFENDANT:  YES, YOUR HONOR.

21           THE COURT:  NOW, SIR, I HAVE BEFORE ME THIS DOCUMENT

22    AND IT IS 12 PAGES LONG, AND IT'S TITLED PLEA AGREEMENT.  AND

23    ON PAGE 11 AT LINE 20 ABOVE YOUR PRINTED NAME THERE'S A

24    SIGNATURE IN BLACK INK.

25         IS THAT YOUR SIGNATURE, SIR?

```
1              THE DEFENDANT:  YES, YOUR HONOR.

2              THE COURT:  DO YOU UNDERSTAND THIS AGREEMENT, SIR?

3              THE DEFENDANT:  I DO, YOUR HONOR.

4              THE COURT:  DID YOU HAVE SUFFICIENT TIME TO READ AND

5    DISCUSS THIS PLEA AGREEMENT WITH YOUR ATTORNEY BEFORE YOU

6    SIGNED IT?

7              THE DEFENDANT:  YES, I DID, YOUR HONOR.

8              THE COURT:  AND HAS YOUR ATTORNEY BEEN ABLE TO

9    ANSWER ANY AND ALL OF THE QUESTIONS THAT YOU MAY HAVE HAD ABOUT

10   THIS PLEA AGREEMENT?

11             THE DEFENDANT:  YES, YOUR HONOR.

12             THE COURT:  IS THERE ANYTHING FURTHER THAT YOU WOULD

13   LIKE TO DISCUSS WITH YOUR ATTORNEY AT THIS POINT?

14             THE DEFENDANT:  NOT AT THIS POINT, YOUR HONOR.

15             THE COURT:  ALL RIGHT.  ARE YOU SATISFIED WITH THE

16   SERVICES THAT YOUR ATTORNEY HAS PROVIDED YOU?

17             THE DEFENDANT:  YES, YOUR HONOR.

18             THE COURT:  OTHER THAN THE PROMISES THAT ARE

19   CONTAINED IN THIS DOCUMENT, THIS PLEA AGREEMENT, HAS ANYONE

20   PROMISED YOU ANYTHING OF ANY KIND TO CAUSE YOU TO PLEAD GUILTY

21   THIS MORNING?

22             THE DEFENDANT:  NO, YOUR HONOR.

23             THE COURT:  DOES THIS DOCUMENT THEN REPRESENT THE

24   ENTIRE AGREEMENT THAT YOU HAVE WITH THE GOVERNMENT IN THIS

25   CASE?
```

6

```
 1              THE DEFENDANT:  YES, YOUR HONOR.

 2              THE COURT:  AND HAS ANYONE THREATENED YOU OR ANYONE

 3    CLOSE TO YOU TO CAUSE YOU TO PLEAD GUILTY THIS MORNING?

 4              THE DEFENDANT:  NO, YOUR HONOR.

 5              THE COURT:  ARE YOU DOING THIS THEN, THAT IS,

 6    PLEADING GUILTY FREELY AND VOLUNTARILY OF YOUR OWN FREE WILL?

 7              THE DEFENDANT:  I AM, YOUR HONOR.

 8              THE COURT:  AND ARE YOU DOING THIS, SIR, BECAUSE IN

 9    TRUTH AND, IN FACT, YOU ARE GUILTY OF THE CHARGES?

10              THE DEFENDANT:  YES, YOUR HONOR.

11              THE COURT:  NOW, SIR, THIS PLEA AGREEMENT IS AN

12    AGREEMENT PURSUANT TO 11(C)(1)(A) AND (C)(1)(B) OF THE RULES OF

13    FEDERAL RULES OF CRIMINAL PROCEDURE.

14        THE LAWYERS HAVE REACHED SOME AGREEMENT AS TO WHAT THEY

15    BELIEVE SENTENCING PARAMETERS MIGHT BE.

16        DO YOU UNDERSTAND THAT?

17              THE DEFENDANT:  YES, YOUR HONOR.

18              THE COURT:  AND THERE'S BEEN, I'M SPEAKING NOW

19    SPECIFICALLY ON PAGE 7, THE LAWYERS IN THIS PLEA AGREEMENT HAVE

20    IDENTIFIED CERTAIN AREAS THAT THE COURTS MUST CONSIDER AND THAT

21    I MUST CONSIDER.

22        THE BASE OFFENSE LEVEL IS, SPECIFIC OFFENSE

23    CHARACTERISTICS WHICH WOULD INCLUDE LOSS AMOUNTS, VICTIM,

24    NUMBER OF VICTIM ADJUSTMENTS, ACCEPTANCE OF RESPONSIBILITY AND

25    THESE TYPES OF THINGS.
```

```
1                DO YOU UNDERSTAND THAT, SIR?

2                      THE DEFENDANT:  YES, YOUR HONOR.

3                      THE COURT:  NOW, ULTIMATELY THE DECISION AS TO WHAT

4        SENTENCE WILL ACTUALLY BE IMPOSED WILL BE MY DECISION.

5                DO YOU UNDERSTAND THAT, SIR?

6                      THE DEFENDANT:  YES, I DO.

7                      THE COURT:  AND THESE ITEMS THAT I JUST REFERENCED

8        ARE MERELY RECOMMENDATIONS.  AND THE COURT COULD FOLLOW, AFTER

9        A HEARING, THE COURT WILL MAKE ITS INDEPENDENT DETERMINATION AS

10       TO THE APPROPRIATE SENTENCE, AND THE COURT COULD FOLLOW THE

11       RECOMMENDATIONS AND SUGGESTIONS THAT THESE LAWYERS HAVE PUT

12       FORTH IN THIS PLEA AGREEMENT.

13               DO YOU UNDERSTAND THAT?

14                     THE DEFENDANT:  YES, I UNDERSTAND THAT, YOUR HONOR.

15                     THE COURT:  BUT THE COURT COULD ALSO DEVIATE FROM

16       THOSE AND THE COURT COULD FIND THAT IN ITS OWN OPINION AND

17       DETERMINATION THAT A DIFFERENT SENTENCE MIGHT BE APPROPRIATE IN

18       THE CASE.

19               FOR EXAMPLE, THE COURT MIGHT FIND THAT IT'S APPROPRIATE TO

20       IMPOSE A SENTENCE THAT MIGHT BE GREATER THAN YOU AND YOUR

21       LAWYER BELIEVE IS APPROPRIATE.

22               DO YOU UNDERSTAND THAT, SIR?

23                     THE DEFENDANT:  I UNDERSTAND THAT, YOUR HONOR.

24                     THE COURT:  IF THAT WERE TO HAPPEN, SIR, YOU WOULD

25       NOT, PURSUANT TO THIS PLEA AGREEMENT, YOU WOULD NOT BE
```

```
 1        PERMITTED TO WITHDRAW YOUR PLEA OF GUILTY.
 2             DO YOU UNDERSTAND THAT?
 3                  THE DEFENDANT:  I UNDERSTAND THAT, YOUR HONOR.
 4                  THE COURT:  NOW, SIR, IN REACHING THESE SUGGESTIONS
 5        AS THE LAWYERS DID IN THIS PLEA AGREEMENT, THE LAWYERS
 6        CONSULTED WITH WHAT ARE CALLED THE UNITED STATES SENTENCING
 7        GUIDELINES.
 8             THESE ARE NOT MANDATORY, BUT THEY MUST BE CONSULTED BY THE
 9        LAWYERS AND BY THE COURT AS WELL.  I MUST REFER TO THOSE.
10             DO YOU UNDERSTAND THAT, SIR?
11                  THE DEFENDANT:  YES, I DO, YOUR HONOR.
12                  THE COURT:  NOW, HAVE YOU HAD SUFFICIENT TIME TO
13        DISCUSS THE SENTENCING GUIDELINES WITH YOUR ATTORNEY AND HAS
14        YOUR ATTORNEY BEEN ABLE TO ANSWER ANY AND ALL OF THE QUESTIONS
15        THAT YOU MAY HAVE HAD ABOUT THOSE GUIDELINES AND HOW THOSE
16        GUIDELINES APPLY TO YOU AND THE FACTS AND CIRCUMSTANCES OF YOUR
17        CASE?
18                  THE DEFENDANT:  YES, YOUR HONOR.
19                  THE COURT:  ALL RIGHT.  DO YOU HAVE ANY ADDITIONAL
20        QUESTIONS FOR YOUR LAWYER AT THIS TIME REGARDING THE GUIDELINES
21        AND REGARDING ANYTHING ABOUT THE ATTRIBUTES OF THIS PLEA
22        AGREEMENT?
23                  THE DEFENDANT:  NO, YOUR HONOR.
24                  THE COURT:  ALL RIGHT.  WHAT I'D LIKE TO DO NOW,
25        SIR, IS TO GO OVER WITH YOU THE ELEMENTS THAT THE -- OF THESE
```

1    OFFENSES, THAT IS, THE ELEMENTS THAT THE GOVERNMENT WOULD HAVE

2    TO PROVE IN ORDER TO GAIN CONVICTION OF YOU FOR THESE OFFENSES.

3         BEGINNING WITH COUNT 1, SIR, THE VIOLATION OF 18 UNITED

4    STATES CODE SECTION 1349, THE GOVERNMENT WOULD HAVE TO PROVE

5    THE FOLLOWING THINGS BY PROOF BEYOND A REASONABLE DOUBT IN

6    ORDER TO GAIN CONVICTION OF YOU.

7         FIRST, THE GOVERNMENT WOULD HAVE TO PROVE THAT TWO OR MORE

8    PERSONS AGREED IN SOME WAY OR MANNER TO TRY TO ACCOMPLISH A

9    COMMON AND UNLAWFUL PLAN TO COMMIT MAIL OR WIRE FRAUD AND THAT

10   YOU KNEW THAT THE UNLAWFUL PURPOSE OF THE PLAN AND THAT YOU

11   WILLFULLY JOINED IN IT.

12        THE GOVERNMENT WOULD ALSO HAVE TO PROVE THAT THIS -- ALL

13   OF THESE INCIDENTS AND THESE FACTS OCCURRED IN THE NORTHERN

14   DISTRICT OF CALIFORNIA.

15        DO YOU UNDERSTAND, SIR, THE THINGS THAT THE GOVERNMENT

16   WOULD HAVE TO PROVE IN ORDER TO CONVICT YOU OF COUNT 1, A

17   VIOLATION OF 18 UNITED STATES CODE SECTION 1349?

18             THE DEFENDANT:  YES, YOUR HONOR.

19             THE COURT:  AND DO YOU UNDERSTAND, SIR, THAT IF THE

20   GOVERNMENT FAILED IN THEIR PROOF, YOU COULD NOT BE CONVICTED OF

21   THAT OFFENSE.

22        DO YOU UNDERSTAND THAT?

23             THE DEFENDANT:  I UNDERSTAND THAT.

24             THE COURT:  THE MAXIMUM PENALTIES, SIR, FOR THAT

25   OFFENSE ARE AS FOLLOWS:  THERE'S A MAXIMUM PRISON TERM OF

1      20 YEARS.

2           DO YOU UNDERSTAND THAT?

3                THE DEFENDANT:  YES, SIR.

4                THE COURT:  AND THERE'S A MAXIMUM FINE OF $250,000

5      OR TWICE THE GROSS GAIN OR LOSS, WHICHEVER IS GREATER.

6           DO YOU UNDERSTAND THAT?

7                THE DEFENDANT:  YES, SIR.

8                THE COURT:  AND THERE'S A MAXIMUM SUPERVISED RELEASE

9      TERM OF 3 YEARS AND A MANDATORY SPECIAL ASSESSMENT OF $100,

10     WHICH I MUST IMPOSE THE ASSESSMENT.

11          DO YOU UNDERSTAND THAT, SIR?

12               THE DEFENDANT:  YES, YOUR HONOR.

13               MR. WHELAN:  YOUR HONOR, I THINK YOU MISSPOKE.  THE

14     MINIMUM TERM IS THREE YEARS AND NOT THE MAXIMUM TERM.

15               THE COURT:  IF I SAID MAXIMUM SUPERVISED RELEASE

16     TERM, I DID MISSPEAK, SIR.  THE MINIMUM SUPERVISED RELEASE TERM

17     IS THREE YEARS.

18          DO YOU UNDERSTAND THAT?

19               THE DEFENDANT:  YES, YOUR HONOR.

20               THE COURT:  AND THERE'S A MANDATORY SPECIAL

21     ASSESSMENT OF $100.

22          DO YOU UNDERSTAND THAT, SIR?

23               THE DEFENDANT:  YES, YOUR HONOR.

24               THE COURT:  AND, NOW, THERE COULD BE RESTITUTION IN

25     THIS CASE, SIR, AND THE COURT WOULD DETERMINE THAT RESTITUTION.

1    THERE MIGHT BE A HEARING AS TO RESTITUTION WHERE YOUR LAWYER

2    AND THE GOVERNMENT WOULD BE ABLE TO PRESENT THEIR THOUGHTS AS

3    TO RESTITUTION AND THE COURT WOULD MAKE ITS ORDER AND

4    DETERMINATION OF RESTITUTION.

5         DO YOU UNDERSTAND THAT, SIR?

6              THE DEFENDANT:  YES.

7              THE COURT:  AND THERE'S ALSO THE POSSIBILITY OF

8    FORFEITURE, THAT IS, FORFEITURE OF CERTAIN FUNDS OR PROCEEDS

9    THAT THE COURT WOULD FIND MIGHT BE, IF THE COURT FOUND THOSE

10   FUNDS TO BE CRIMINAL PROCEEDS.

11        DO YOU UNDERSTAND THAT, SIR?

12             THE DEFENDANT:  YES, YOUR HONOR.

13             THE COURT:  IN ORDER TO CONVICT YOU, SIR, OF A

14   VIOLATION OF 18 UNITED STATES CODE SECTION 1341, THAT IS, THE

15   MAIL FRAUD SECTIONS, THE COURT -- EXCUSE ME -- THE GOVERNMENT

16   WOULD HAVE TO PROVE THE FOLLOWING THINGS BY PROOF BEYOND A

17   REASONABLE DOUBT:

18        THE COURT -- THE GOVERNMENT WOULD HAVE TO PROVE THAT YOU

19   KNOWINGLY MADE UP A SCHEME OR PLAN FOR OBTAINING MONEY BY

20   MAKING FALSE PROMISES OR STATEMENTS AND THAT YOU KNEW THAT THE

21   PROMISES OR STATEMENTS WERE FALSE; THAT THE PROMISES OR

22   STATEMENTS WERE MATERIAL; AND THAT YOU ACTED WITH THE INTENT TO

23   DEFRAUD; AND THAT YOU USED OR CAUSED TO BE USED THE MAILS TO

24   CARRY OUT AN ESSENTIAL PART OF THIS SCHEME.

25        THE GOVERNMENT WOULD ALSO HAVE TO PROVE THAT ALL OF THESE

```
 1       THINGS OCCURRED IN THE NORTHERN DISTRICT OF CALIFORNIA.

 2            DO YOU UNDERSTAND THEN THE THINGS THAT THE GOVERNMENT

 3       WOULD HAVE TO PROVE BEYOND A REASONABLE DOUBT IN ORDER TO GAIN

 4       CONVICTION OF YOU FOR THIS VIOLATION, SIR?

 5                 THE DEFENDANT:  YES, YOUR HONOR.

 6                 THE COURT:  THE MAXIMUM PENALTIES FOR THIS VIOLATION

 7       ARE AS FOLLOWS, SIR:

 8            THERE'S A MAXIMUM PRISON TERM OF 20 YEARS.

 9            DO YOU UNDERSTAND THAT?

10                 THE DEFENDANT:  YES, SIR.

11                 THE COURT:  AND THERE'S A MAXIMUM FINE OF $250,000

12       OR TWICE THE GROSS GAIN OR LOSS, WHICHEVER IS GREATER.

13            DO YOU UNDERSTAND THAT?

14                 THE DEFENDANT:  YES, YOUR HONOR.

15                 THE COURT:  AND THERE'S A MINIMUM SUPERVISED RELEASE

16       TERM OF THREE YEARS.

17            DO YOU UNDERSTAND THAT?

18                 THE DEFENDANT:  YES.

19                 THE COURT:  AND A MANDATORY SPECIAL ASSESSMENT OF

20       $100 THAT I MUST IMPOSE.

21            DO YOU UNDERSTAND THAT, SIR?

22                 THE DEFENDANT:  YES.

23                 THE COURT:  AND, AGAIN, SIR, ANY RESTITUTION WOULD

24       BE DETERMINED BY THE COURT FOLLOWING A HEARING AND ALSO THERE

25       ARE FORFEITURE PROCEEDINGS THAT COULD APPLY TO THIS CASE.
```

1        DO YOU UNDERSTAND THAT, SIR?

2              THE DEFENDANT:  YES, I DO.

3              THE COURT:  NOW, THE ELEMENTS, THE THINGS THAT THE

4    GOVERNMENT WOULD HAVE TO PROVE BEYOND A REASONABLE DOUBT IN

5    ORDER TO GAIN CONVICTION OF YOU FOR COUNT 27, A VIOLATION OF 15

6    UNITED STATES CODE SECTIONS 78J SUBSECTION (B) AND 78FF, 17

7    C.F.R. SECTION 240.10B-5 ARE AS FOLLOWS:

8              THE GOVERNMENT WOULD HAVE TO PROVE BEYOND A REASONABLE

9    DOUBT THAT YOU KNOWINGLY USED A DEVICE OR SCHEME TO DEFRAUD

10   SOMEONE; THAT YOU KNEW YOUR ACTS WERE IN CONNECTION WITH THE

11   PURCHASE OR SALE OF SHARES IN THE GLR GROWTH FUND LP; THAT YOU

12   DIRECTLY OR INDIRECTLY USED THE MAILS IN CONNECTION WITH THESE

13   ACTS; AND THAT YOU ACTED FOR THE PURPOSE OF DEFRAUDING BUYERS

14   OR SELLERS OF SHARES IN THE GLR GROWTH FUND LP.

15             THE GOVERNMENT WOULD HAVE TO PROVE, AGAIN, THAT ALL OF

16   THESE ACTS TOOK PLACE IN THE NORTHERN DISTRICT OF CALIFORNIA.

17             DO YOU UNDERSTAND THEN THE THINGS THAT THE GOVERNMENT

18   WOULD HAVE TO PROVE BEYOND A REASONABLE DOUBT IN ORDER TO GAIN

19   CONVICTION OF YOU FOR THIS OFFENSE?

20             THE DEFENDANT:  YES, YOUR HONOR.

21             THE COURT:  THE MAXIMUM PENALTY FOR THIS VIOLATION,

22   SIR, ARE AS FOLLOWS:

23        THERE'S A MAXIMUM PRISON SENTENCE OF 20 YEARS.  YOU

24   UNDERSTAND THAT?

25             THE DEFENDANT:  YES, YOUR HONOR.

14

```
 1              THE COURT:  THERE'S A MAXIMUM FINE OF $5 MILLION.

 2    DO YOU UNDERSTAND THAT?

 3              THE DEFENDANT:  YES, YOUR HONOR.

 4              THE COURT:  AND THERE'S A MINIMUM SUPERVISED RELEASE

 5    TERM OF 3 YEARS AND A MANDATORY SPECIAL ASSESSMENT OF $100.

 6         DO YOU UNDERSTAND THAT, SIR?

 7              THE DEFENDANT:  YES, SIR.

 8              THE COURT:  AND THERE COULD BE RESTITUTION THAT

 9    WOULD, AGAIN, BE DETERMINED BY THE COURT AND THERE COULD BE

10    FORFEITURE OF ANY CRIMINAL PROCEEDS AND THE COURT WOULD MAKE

11    THOSE INDEPENDENT DETERMINATIONS.

12         DO YOU UNDERSTAND THAT, SIR?

13              THE DEFENDANT:  YES, YOUR HONOR.

14              THE COURT:  AND I MUST ALSO ADVISE YOU, SIR, THAT IF

15    YOU ARE NOT A UNITED STATES CITIZEN, CONVICTION OF THESE

16    OFFENSES COULD CAUSE YOU TO BE DENIED NATURALIZATION OF

17    DEPORTATION OR DENIED REENTRY INTO THE COUNTRY PURSUANT TO THE

18    LAWS OF THE UNITED STATES.

19         DO YOU UNDERSTAND THAT, SIR?

20              THE DEFENDANT:  YES, I DO.

21              THE COURT:  CONVICTION OF THESE OFFENSES COULD ALSO

22    HAVE OTHER COLLATERAL CONSEQUENCES ON YOU, SIR.  FOR EXAMPLE,

23    YOU WOULD NOT BE PERMITTED TO OWN, POSSESS OR HAVE UNDER YOUR

24    CONTROL A FIREARM AS A RESULT OF THESE CONVICTIONS.

25         DO YOU UNDERSTAND THAT?
```

1          THE DEFENDANT:  YES, YOUR HONOR.

2          THE COURT:  AND YOU WOULD ALSO, IT'S POSSIBLE THAT

3    YOU COULD ALSO BE DENIED CERTAIN BENEFITS, GOVERNMENT BENEFITS

4    THAT OTHER INDIVIDUALS MIGHT ENJOY.

5          DO YOU UNDERSTAND THAT, SIR?

6          THE DEFENDANT:  YES, YOUR HONOR.

7          THE COURT:  AND ALSO, SIR, THAT IF YOU WERE PLACED

8    ON A PERIOD OF SUPERVISED RELEASE, THERE WOULD BE CONDITIONS OF

9    THIS RELEASE.

10         IF YOU WERE SUBSEQUENTLY TO VIOLATE A CONDITION OF YOUR

11   SUPERVISED RELEASE, AND THAT WERE PROVED AT A HEARING, YOU

12   COULD BE SENTENCED TO PRISON FOR THAT VIOLATION.

13         DO YOU UNDERSTAND THAT, SIR?

14         THE DEFENDANT:  YES, YOUR HONOR, I DO.

15         THE COURT:  NOW, FURTHER IN THIS PLEA AGREEMENT,

16   SIR, I NOTE THAT PARAGRAPHS 4 AND 5 THAT ARE FOUND ON PAGE 6 OF

17   THE AGREEMENT TELL US THAT YOU ALSO AGREE TO GIVE UP YOUR RIGHT

18   TO APPEAL THE CONVICTION, THE JUDGMENT, THAT IS, THE SENTENCE,

19   AND ORDERS OF THIS COURT.

20         YOU ALSO ARE AGREEING TO WAIVE ANY RIGHT THAT YOU HAVE TO

21   APPEAL ANY ASPECT OF YOUR SENTENCE, INCLUDING ORDERS RELATING

22   TO FORFEITURE AND RESTITUTION.

23         DO YOU UNDERSTAND THAT?

24         THE DEFENDANT:  YES, YOUR HONOR.

25         THE COURT:  PARAGRAPH 5, SIR, TELLS US THAT YOU ALSO

```
1    AGREE NOT TO FILE ANY COLLATERAL ATTACK ON YOUR CONVICTIONS OR

2    SENTENCE, INCLUDING PETITIONS UNDER 28 UNITED STATES CODE

3    SECTIONS 2255 OR 2241.

4         DO YOU UNDERSTAND THAT?

5              THE DEFENDANT:  YES, YOUR HONOR.

6              THE COURT:  YOU DO RETAIN THE RIGHT TO FILE AN

7    APPEAL AND CLAIM THAT YOUR COUNSEL WAS LESS THAN EFFECTIVE IN

8    CONNECTION WITH THE NEGOTIATION OF THE AGREEMENT OR ENTRY OF

9    YOUR GUILTY PLEA.

10        DO YOU UNDERSTAND THAT, SIR?

11             THE DEFENDANT:  YES, YOUR HONOR.

12             THE COURT:  PARAGRAPH 8 FOUND ON PAGE 8 ALSO TELLS

13   US AT LINE 7, SIR, THAT YOU ARE AGREEING TO A SPECIAL CONDITION

14   OF SUPERVISED RELEASE IN REGARDS TO SEARCHES.

15        AND YOU UNDERSTAND THAT?

16             THE DEFENDANT:  YES, YOUR HONOR.

17             THE COURT:  AND YOU'VE HAD AN OPPORTUNITY TO READ

18   AND UNDERSTAND THAT PARAGRAPH REGARDING THOSE SEARCH

19   CONDITIONS?

20             THE DEFENDANT:  YES, YOUR HONOR.

21             THE COURT:  THERE'S ALSO LANGUAGE IN THIS DOCUMENT

22   THAT SUGGESTS AT SOME TIME THE GOVERNMENT MAY MAKE APPROPRIATE

23   APPLICATION TO THE COURT AND MAKE COMMENTS AS TO WHAT THE

24   GOVERNMENT FEELS AN APPROPRIATE SENTENCE SHOULD BE AND ANY

25   DEVIATION OR REDUCTION IN THE SENTENCE.
```

1        DO YOU UNDERSTAND THAT?  DO YOU SEE THAT LANGUAGE THAT

2   BEGINS ON PARAGRAPH 11 ON PAGE 9?

3        THE DEFENDANT:  YES, YOUR HONOR.

4        THE COURT:  NOW, THIS PLEA AGREEMENT ALSO INDICATES

5   THAT THERE'S NO PROMISE BY THE GOVERNMENT THAT THEY WILL DO

6   ANYTHING.  DO YOU UNDERSTAND THAT?  IT APPEARS THAT THIS IS

7   SOLELY IN THEIR DISCRETION.

8        THE DEFENDANT:  I DO, YOUR HONOR.

9        THE COURT:  HAS ANY PROMISE BEEN MADE TO YOU THAT

10  THE GOVERNMENT WILL DO ANYTHING AT ALL SPECIFICALLY IN REGARDS

11  TO THIS PARAGRAPH, SIR?

12        THE DEFENDANT:  NO, YOUR HONOR.

13        THE COURT:  NOW, SIR, WHAT I'D LIKE TO DO NOW IS TO

14  GO OVER WITH YOU THE RIGHTS THAT YOU CURRENTLY ENJOY.  I'M

15  GOING TO EXPLAIN EACH OF THESE RIGHTS TO YOU.  I'M GOING TO ASK

16  YOU IF YOU WERE ABLE TO HEAR AND UNDERSTAND THE RIGHT.  I'LL

17  THEN ASK YOU IF YOU WISH TO WAIVE OR GIVE UP THAT RIGHT SO THAT

18  I CAN THEN ACCEPT YOUR PLEA OF GUILTY TO THE CHARGES.

19        FIRST OF ALL, SIR, YOU DO UNDERSTAND THAT YOU DO HAVE THE

20  RIGHT TO CONTINUE WITH YOUR PLEA OF NOT GUILTY AND PROCEED TO

21  TRIAL.

22        DO YOU UNDERSTAND THAT, SIR?

23        THE DEFENDANT:  YES, I DO.

24        THE COURT:  AND YOU HAVE THE RIGHT TO A JURY TRIAL.

25  A JURY TRIAL IS A HEARING WHERE 12 MEMBERS OF THE COMMUNITY ARE

1    SELECTED AND THEY SEE AND HEAR THE EVIDENCE AND ARGUMENTS OF

2    COUNSEL AND THEY THEN MAKE A DECISION AS TO GUILT OR INNOCENCE

3    IF THEY'RE ABLE TO.  THAT'S WHAT A JURY TRIAL IS.

4         DO YOU UNDERSTAND THEN YOUR RIGHT TO A JURY TRIAL?

5              THE DEFENDANT:  YES, YOUR HONOR.

6              THE COURT:  AND DO YOU GIVE UP THAT RIGHT?

7              THE DEFENDANT:  I DO, YOUR HONOR.

8              THE COURT:  AT YOUR TRIAL, SIR, YOU HAVE A RIGHT TO

9    BE REPRESENTED BY COUNSEL.  IF YOU COULD NOT AFFORD AN

10   ATTORNEY, I WOULD APPOINT AN ATTORNEY TO REPRESENT YOU AT NO

11   CHARGE TO YOU.

12        DO YOU UNDERSTAND THAT RIGHT?

13             THE DEFENDANT:  YES, YOUR HONOR.

14             THE COURT:  DO YOU GIVE UP THAT RIGHT?

15             THE DEFENDANT:  YES, YOUR HONOR.

16             THE COURT:  AT YOUR TRIAL, SIR, YOU HAVE THE RIGHT

17   TO SEE AND HEAR AND ASK QUESTIONS OF ALL OF THE WITNESSES THAT

18   WILL TESTIFY AGAINST YOU.  THAT'S CALLED YOUR RIGHT OF

19   CONFRONTATION.

20        DO YOU UNDERSTAND THAT RIGHT?

21             THE DEFENDANT:  YES, YOUR HONOR.

22             THE COURT:  AND DO YOU GIVE UP THAT RIGHT?

23             THE DEFENDANT:  YES, YOUR HONOR.

24             THE COURT:  YOU HAVE A RIGHT TO PUT ON A DEFENSE AND

25   YOU COULD CALL WITNESSES TO TESTIFY IN YOUR DEFENSE AND YOU

1    COULD USE THE SUBPOENA POWER OF THE COURT TO COMPEL TO MAKE

2    THOSE WITNESSES TO COME TO COURT AND TESTIFY FOR YOU.

3         DO YOU UNDERSTAND THAT RIGHT?

4              THE DEFENDANT:  YES, YOUR HONOR.

5              THE COURT:  AND DO YOU GIVE UP THAT RIGHT?

6              THE DEFENDANT:  I DO, YOUR HONOR.

7              THE COURT:  AND YOU HAVE THE RIGHT TO TESTIFY IN

8    YOUR OWN DEFENSE IF YOU WISH.  HOWEVER, YOU MAY NOT BE

9    COMPELLED TO TESTIFY IF YOU DO NOT WISH TO DO SO.

10        YOU MUST UNDERSTAND, SIR, THAT BY PLEADING GUILTY TO THESE

11   CHARGES THIS MORNING, YOU DO INCRIMINATE YOURSELF TO THE

12   HIGHEST DEGREE.

13        DO YOU UNDERSTAND THEN YOUR RIGHT AGAINST

14   SELF-INCRIMINATION?

15             THE DEFENDANT:  YES, YOUR HONOR, I DO.

16             THE COURT:  AND DO YOU GIVE UP THAT RIGHT?

17             THE DEFENDANT:  YES, YOUR HONOR.

18             THE COURT:  NOW, SIR, I'M GOING TO ASK MR. SCHENK TO

19   NOW PROVIDE TO US A BRIEF STATEMENT AND DESCRIPTION THAT

20   DESCRIBES THE FACTS UPON WHICH THIS PROSECUTION IS BASED.

21        I'M GOING TO INVITE YOU TO LISTEN VERY CLOSELY TO THIS

22   DESCRIPTION OF FACTS THAT THE GOVERNMENT IS PREPARED TO PROVE

23   IN THEIR PROSECUTION AGAINST YOU, SIR.

24        AT ITS CONCLUSION I'LL ASK YOU IF YOU WERE ABLE TO HEAR

25   AND UNDERSTAND THE FACTS THAT THE GOVERNMENT IS PREPARED TO

1    PROVE AGAINST YOU IN THEIR CASE.

2        FOLLOWING THAT, SIR, I'LL THEN ASK YOU TO YOUR PLEAS TO

3    EACH OF THE CHARGES.

4        MR. SCHENK.

5            MR. SCHENK:  THANK YOU, YOUR HONOR.

6        THROUGH DOCUMENTS AND TESTIMONY THE UNITED STATES IS

7    PREPARED TO PROVE BEYOND A REASONABLE DOUBT THAT IN 2002 CHRIS

8    LUCK, KEITH RODE, AND THE DEFENDANT ESTABLISHED A LIMITED

9    LIABILITY COMPANY ENTITLED GERINGER, LUCK & RODE, LLC, KNOWN AS

10   THE LLC, LOCATED AT 4444 SCOTTS VALLEY DRIVE IN SCOTTS VALLEY,

11   CALIFORNIA.  THEY FORMED GLR CAPITAL MANAGEMENT LLC AND GLR

12   GROWTH FUND LP.  THAT'S ALSO KNOWN AS THE FUND.

13       THE LLC WAS THE PARENT COMPANY THAT PAID MOST OF THE

14   OVERHEAD FOR GLR CAPITAL MANAGEMENT AND THE FUND.

15       GLR CAPITAL MANAGEMENT WAS RESPONSIBLE FOR PAYING THE

16   THREE PARTNER'S SALARIES.

17       CHRIS LUCK, KEITH RODE, AND THE DEFENDANT WERE FRIENDS

18   BEFORE THE ESTABLISHMENT OF THE LLC.

19       THE DEFENDANT HAD EXPERIENCE IN FINANCE, TRADING, AND

20   INSURANCE, AND HAD THE NECESSARY LICENSES AND REGISTRATION TO

21   MANAGE INVESTMENTS.

22       THE DEFENDANT'S PRIMARY RESPONSIBILITIES AT THE FUND

23   CONSISTED OF CLIENT RELATIONS, MAINTAINING CLIENT ACCOUNTS, AND

24   ALLOCATION OF INVESTMENT FUNDS.

25       LUCK HAD EXPERIENCE IN BUSINESS OPERATIONS, MARKETING, AND

1    RUNNING START-UP COMPANIES.

2         LUCK'S PRIMARY RESPONSIBILITIES INCLUDED MANAGING PRIVATE

3    COMPANIES INTO WHICH THE FUND INVESTED, INCLUDING MEDIATILE AND

4    DIGITAL DELIVERY NETWORKS INC., KNOWN AS DDNI.

5         LUCK ALSO PARTICIPATED WITH THE RECRUITMENT OF INVESTORS

6    INTO THE FUND.  ON CERTAIN OCCASIONS LUCK SAT DOWN WITH

7    POTENTIAL INVESTORS AND EXPLAINED TO THEM THE REASONS WHY THEY

8    SHOULD INVEST WITH THE FUND.

9         KEITH RODE IS AND WAS THE C.P.A. AND HAD EXPERIENCE IN

10   ACCOUNTING AND TAXES.  KEITH RODE PREPARED FUND INVESTOR

11   STATEMENTS AND PREPARED GLR'S TAX RETURNS.

12        BY COMBINING ALL OF OUR VARIOUS SKILLS, THE THREE PARTNERS

13   SOUGHT TO CREATE AND MANAGE AN INVESTMENT COMPANY.  THEY

14   RECRUITED INVESTORS WITH PROMISES OF HIGH RETURNS WITH

15   INVESTMENTS DIVIDED 75 PERCENT INTO EQUITIES AND 25 PERCENT

16   INTO DIRECT COMPANY INVESTMENTS.

17        THEY FORMED THE FUND IN 2003.

18        NEW INVESTMENTS INTO THE FUND WERE LOCKED IN FOR A

19   12-MONTH PERIOD.  AFTER THAT, INVESTORS COULD REQUEST

20   WITHDRAWAL OF ALL OR PART OF THEIR FUNDS.

21        INVESTORS ALSO HAD THE OPTION OF HAVING THEIR INVESTMENTS

22   ROLLED OVER FOR ANOTHER YEAR.  INVESTORS WHO WANTED TO WITHDRAW

23   INVESTMENT FUNDS WERE REQUIRED TO GIVE GLR WRITTEN NOTICE

24   60 DAYS PRIOR TO THE DATE THE FUNDS WOULD BE RETURNED.

25        THEY RECRUITED NEW INVESTORS SOLELY THROUGH WORD OF MOUTH

1    AND REFERRALS.

2         PRIOR TO 2008, THE FUND INVESTED IN A COMBINATION OF

3    STOCKS AND PRIVATE COMPANY INVESTMENTS.

4         HOWEVER, BETWEEN 2004 AND 2008, CHRIS LUCK ENCOURAGED

5    KEITH RODE AND THE DEFENDANT TO INVEST INCREASING AMOUNTS OF

6    INVESTOR MONEY INTO PRIVATE COMPANIES.

7         AFTER SOME EARLY SUCCESS IN PRIVATE COMPANY INVESTMENTS

8    AND IN LINE WITH LUCK'S WISHES, THE DEFENDANT BEGAN TO DIVERT

9    MORE AND MORE INVESTOR COMPANIES INTO PRIVATE COMPANIES EVEN

10   THOUGH THEY WERE STILL REPRESENTING TO POTENTIAL INVESTORS THAT

11   THEIR INVESTMENTS WOULD BE ALLOCATED 20 PERCENT IN S & P 100,

12   AND 20 PERCENT IN S & P 500 INDEX, 20 PERCENT IN NASDAQ,

13   15 PERCENT IN DOW JONES 30, AND 25 PERCENT IN DIRECT COMPANY

14   INVESTMENTS.  THE DEFENDANT BEGAN TO DIVERT MORE AND MORE OF

15   THE FUND INTO PRIVATE COMPANIES.

16        SINCE THE PRIVATE COMPANY INVESTMENTS GENERATED NO RETURN

17   TO THE FUND EXCEPT UPON SALE, THE FUND HAD LESS MONEY AVAILABLE

18   FOR TRADING.

19        THIS LACK OF MONEY CREATED ADDITIONAL PRESSURE ON THE

20   DEFENDANT TO GENERATE HIGH RETURNS IN THE FUND'S TRADING

21   ACCOUNTS.

22        AS A RESULT OF THIS PRESSURE, THE DEFENDANT BEGAN

23   FALSIFYING BROKER ACCOUNT STATEMENTS TO REFLECT BETTER

24   PERFORMANCE HOPING THIS WOULD CONTINUE TO JUSTIFY USING

25   INVESTOR FUNDS FOR EVEN MORE PRIVATE COMPANY INVESTMENTS.

1    BASED UPON HIS FALSE PERFORMANCE REPORTS, AT THE END OF

2    2008, LUCK, RODE, AND THE DEFENDANT EACH TOOK A BONUS PAYMENT

3    OF APPROXIMATELY $1.1 MILLION FROM THE FUND.

4    THIS CYCLE OF FALSIFIED TRADING GAINS USED TO JUSTIFY

5    INCREASED PRIVATE COMPANY INVESTMENTS CONTINUED FROM 2004

6    THROUGH MAY 25, 2012, WHEN THE SECURITIES AND EXCHANGE

7    COMMISSION FILED AN ADMINISTRATIVE ACTION AGAINST THE

8    DEFENDANT.

9    AFTER 2008, FOLLOWING A MAJOR LIQUIDATION BY SOME

10   SIGNIFICANT INVESTORS AND WITH WORSENING ECONOMIC CONDITIONS,

11   THE DEFENDANT MADE THE DECISION TO INVEST THE FUND EXCLUSIVELY

12   INTO ONE OF TWO PRIVATE COMPANIES, MEDIATILE AND DDNI.

13   BOTH MEDIATILE AND DDNI ARE LOCATED IN SCOTTS VALLEY.

14   LUCK AND RODE SERVED ON THE BOARDS OF DIRECTORS FOR MEDIATILE

15   AND DDNI.

16   ALTHOUGH THE DEFENDANT BELIEVED THE LIMITED PARTNERSHIP

17   AGREEMENT EMPOWERED HIM TO ALLOCATE FUND MONEY AS HE DEEMED

18   APPROPRIATE BASED ON MARKET CONDITIONS, HE DID NOT INITIALLY

19   DISCLOSE THIS ACTION TO LUCK, RODE OR THE INVESTORS.

20   IN OR ABOUT APRIL OF 2009 AN INVESTOR, A FUND INVESTOR

21   BEARING THE INITIALS I.H., REQUESTED THE RETURN OF HER

22   $12 MILLION INVESTMENT INTO THE FUND.

23   SINCE MOST OF THE FUND WAS INVESTED IN DDNI AND MEDIATILE,

24   THERE WERE NOT ENOUGH LIQUID FUNDS TO REPAY HER.

25   THEN THE DEFENDANT KNEW THAT HE HAD TO REIMBURSE THE FUND

1    FOR THE $1.1 MILLION BONUS THAT HE HAD TAKEN AT THE END OF 2008

2    AND ALSO THAT HE HAD TO DISCLOSE THE STATUS OF THE FUND AND

3    I.H.'S REQUEST TO HIS PARTNERS LUCK AND RODE.

4         SHORTLY THEREAFTER LUCK AND THE DEFENDANT MET IN PERSON

5    AND THEY CALLED RODE.

6         DURING THIS MEETING THE DEFENDANT TOLD LUCK AND RODE THAT

7    THEY EACH NEEDED TO REPAY THE $1.1 MILLION BONUS THAT THEY HAD

8    TAKEN AT THE END OF 2008.

9         LUCK AND RODE DEMANDED AN EXPLANATION FOR THE DEFENDANT'S

10   REQUEST THAT THEY RETURN THIS BONUS.  THE DEFENDANT EXPLAINED

11   TO LUCK AND RODE THE STATUS OF THE FUND, INCLUDING HIS

12   FALSIFIED BROKER ACCOUNT STATEMENTS, I.H.'S REQUEST, AND THAT

13   THEY NEEDED TO REPAY THE $1.1 MILLION BONUS.

14        DURING THIS MEETING THE THREE PARTNERS DECIDED TO ATTEMPT

15   TO NEGOTIATE INSTALLMENT PAYMENTS TO I.H.

16        SOON AFTER THIS MEETING ON OR ABOUT APRIL 23RD, 2009, THE

17   DEFENDANT DRAFTED AND SIGNED A DOCUMENT KNOWN AS HIS

18   CONFESSION.  IN THIS DOCUMENT THE DEFENDANT TRUTHFULLY WROTE

19   THAT HE HAD FALSIFIED TRADING STATEMENTS, REPORTS BOTH WRITTEN

20   AND VERBAL, AND TRADES TO THE GLR GROWTH FUND LP AND GLR

21   CAPITAL MANAGEMENT LLC.

22        MR. GERINGER WROTE THIS DOCUMENT IN RESPONSE TO THE VERBAL

23   ADMISSION THAT HE HAD MADE RECENTLY TO HIS PARTNERS LUCK AND

24   RODE.

25        AFTER HIS EARLY 2009 CONFESSION TO LUCK AND RODE, THE

1   THREE PARTNERS HAD A CONVERSATION WHEN THEY DECIDED THEY HAD A

2   CHOICE TO MAKE.  THEY COULD EITHER REPORT HIS MISCONDUCT TO LAW

3   ENFORCEMENT OR THE THREE OF THEM COULD ATTEMPT TO EARN THE LOST

4   MONEY BACK FOR THEIR INVESTORS.

5       THEY DECIDED TO TRY TO MAKE THEIR INVESTORS WHOLE.  IN

6   CHOOSING THIS PATH, THEY KNEW THAT THEY WOULD NEED TO RECRUIT

7   ADDITIONAL INVESTORS.  THEY ALSO KNEW THAT DURING THIS PERIOD

8   OF RECRUITMENT OF NEW INVESTORS BEGINNING IN MID-2009, LUCK AND

9   THE DEFENDANT WOULD HAVE, AND, IN FACT, DID MEET AND MAKE MANY

10  FALSE AND MISLEADING STATEMENTS AND REPRESENTATIONS TO

11  POTENTIAL INVESTORS.

12      AMONG THESE FALSE STATEMENTS AND MATERIAL OMISSIONS, LUCK

13  AND THE DEFENDANT LED POTENTIAL INVESTORS TO BELIEVE THAT THE

14  FUND HAD A POSITIVE HISTORICAL STOCK MARKET PERFORMANCE AND HAD

15  MADE AND WOULD CONTINUE TO MAKE DIVERSIFIED EQUITY TRADES AND

16  WOULD NOT DIVERT ALL OF AN INVESTMENT INTO PRIVATE COMPANIES

17  SUCH AS MEDIATILE AND DDNI.

18      LUCK AND THE DEFENDANT, EVEN THOUGH THEY MADE THESE

19  REPRESENTATIONS TO INVESTORS, KNEW THEM TO BE FALSE.

20      MR. GERINGER AND MR. LUCK UNDERSTOOD THAT IF THEY WERE

21  HONEST WITH POTENTIAL INVESTORS, MANY WOULD NOT INVEST IN THE

22  FUND.

23      BOTH BEFORE AND AFTER THE DEFENDANT'S CONFESSION WITH HIS

24  PARTNERS, LUCK AND THE DEFENDANTS PROVIDED CERTAIN DOCUMENTS TO

25  POTENTIAL INVESTORS IN ORDER TO ENCOURAGE THEM TO INVEST IN THE

1    FUND.

2         THE DEFENDANT KNEW AND AFTER HIS CONFESSION IN APRIL OF

3    2009, CHRISTOPHER LUCK KNEW THAT THESE NEW INVESTOR MATERIALS

4    CONTAINED SEVERAL INACCURACIES.

5         FOR INSTANCE, THE INVESTMENT MATERIALS STATED IN 2003 FROM

6    AT LEAST 2009, THE FUND ASSET ALLOCATION WAS 20 PERCENT IN

7    S & P 100, 20 PERCENT IN S & P 500 INDEX, 20 PERCENT IN NASDAQ,

8    15 PERCENT IN DOW JONES 30, AND 25 PERCENT IN DIRECT COMPANY

9    INVESTMENTS.

10        THIS ASSET ALLOCATION WAS NO LONGER ACCURATE AFTER 2008

11   AND CHRISTOPHER LUCK AND THE DEFENDANT KNEW THAT TO BE TRUE.

12   CHRISTOPHER LUCK AND THE DEFENDANT CONTINUED TO TELL INVESTORS

13   THAT THIS ALLOCATION WAS ACCURATE BECAUSE THEY BELIEVED THAT

14   CLAIMING THE FUND PROVIDED DIVERSE ALLOCATION WAS NECESSARY TO

15   CAUSE NEW INVESTORS TO INVEST IN THE FUND.

16        THE DEFENDANT WROTE QUOTE, "MEMBER NASD AND SEC APPROVED,"

17   CLOSED QUOTE, ON THE INVESTOR MATERIALS.

18        THE DEFENDANT KNEW THAT THE FUND WAS NOT A MEMBER OF NASD

19   NOR WAS IT APPROVED BY THE S.E.C.  THE DEFENDANT UNDERSTOOD

20   THAT BY USING THIS LANGUAGE ON THE INVESTMENT MATERIALS,

21   INVESTORS MAY HAVE FELT A FALSE SENSE OF COMFORT OR BEEN

22   ENCOURAGED TO INVEST IN THE FUND.

23        ALSO, THE INVESTMENT MATERIALS CLAIMED THAT THE FUND WAS

24   INDEPENDENTLY AUDITED EACH YEAR.  THIS, TOO, WAS A FALSE

25   STATEMENT.

```
1         THE DEFENDANT BELIEVED THAT PLACING THIS STATEMENT ON THE

2    INVESTMENT MATERIALS WOULD PROVIDE A SENSE OF COMFORT TO

3    POTENTIAL INVESTORS AND ENCOURAGE THEIR INVESTMENT INTO THE

4    FUND.

5         BEFORE AND AFTER THE DEFENDANT'S CONFESSION, KEITH RODE

6    MAILED QUARTERLY STATEMENTS TO EACH INVESTOR AND PREPARED TAX

7    STATEMENTS.

8         AFTER THE DEFENDANT'S CONFESSION, KEITH RODE CONTINUED TO

9    SEND TO EACH INVESTOR A QUARTERLY STATEMENT SHOWING THE FUND'S

10   INVESTMENT PERFORMANCE.

11        THE DEFENDANT BELIEVES THESE ACCOUNT STATEMENTS WERE

12   MISLEADING BECAUSE THEY CREATED THE FALSE IMPRESSION AMONG BOTH

13   CURRENT AND POTENTIAL INVESTORS THAT THE FUND HAD REALIZED

14   ACTUAL AND PROFITABLE STOCK MARKET RETURNS WHEN, IN FACT, THE

15   PARTNERS KNEW THAT IT HAD NOT.

16        THE PERCENTAGE RETURN REPORTED TO INVESTORS WAS BASED

17   SOLELY UPON THEIR INTERNAL VALUATION OF DDNI AND MEDIATILE, THE

18   PRIVATE COMPANIES THE FUND WAS INCLUSIVELY INVESTING IN AT THIS

19   POINT.

20        KEITH RODE, AFTER LEARNING ABOUT THE DEFENDANT'S

21   PRE-APRIL 2009 FALSIFIED BROKER ACCOUNT STATEMENTS, FAILED TO

22   SEND CORRECTED ACCOUNT STATEMENTS TO INVESTORS.

23        THE DEFENDANT BELIEVES THAT KEITH RODE KNEW THAT DOING SO

24   WOULD HAVE BOTH CAUSED OLD INVESTORS TO DEMAND THE RETURN OF

25   THEIR INVESTMENTS AS WELL AS PREVENT THE THREE PARTNERS FROM
```

1    RECRUITING ANY NEW INVESTORS INTO THE FUND.

2         FOR EXAMPLE, ON OR ABOUT APRIL 27, 2011, LUCK, RODE, AND

3    THE DEFENDANT MAILED OR CAUSED TO BE MAILED A FALSE OR

4    MISLEADING ACCOUNT INTEREST STATEMENT TO AN INVESTOR BEARING

5    THE INITIALS L.B.

6         IN TOTAL, THE DEFENDANT BELIEVES THAT THE FUND INVESTED

7    BETWEEN $45 AND $50 MILLION INTO TWO PRIVATE COMPANIES,

8    MEDIATILE AND DDNI.

9         NEITHER MEDIATILE NOR DDNI MADE ANY PAYMENTS TO THE FUND,

10   ALTHOUGH THE FUND WAS ITS LARGEST SHAREHOLDER IN EACH COMPANY.

11        LUCK, RODE, AND THE DEFENDANT HAD HOPED TO SELL MEDIATILE

12   TO DDNI FOR SUBSTANTIAL PROFIT AND TO USE THOSE PROFITS TO MAKE

13   ALL OF THEIR INVESTORS WHOLE.

14        THE GOVERNMENT IS PREPARED TO PROVE THAT THE MAILS AND

15   OTHER CONDUCT OCCURRED IN THE NORTHERN DISTRICT OF CALIFORNIA.

16             THE COURT:  THANK YOU, MR. SCHENK.

17        MR. GERINGER, WERE YOU ABLE TO HEAR AND UNDERSTAND THE

18   FACTS THAT THE GOVERNMENT IS PREPARED TO PROVE IN ITS

19   PROSECUTION AGAINST YOU?

20             THE DEFENDANT:  YES, YOUR HONOR.

21             THE COURT:  ARE THOSE FACTS TRUE AND CORRECT, SIR?

22             THE DEFENDANT:  THEY ARE CORRECT, YOUR HONOR.

23             THE COURT:  ARE THEY TRUE?

24             THE DEFENDANT:  THEY'RE TRUE, YOUR HONOR.

25             THE COURT:  THANK YOU.  I'LL NOW ASK YOU FOR YOUR

1    PLEA, SIR.  AND I'M REFERRING TO AN INDICTMENT THAT IS DATED

2    DECEMBER 20, 2012.

3         IT'S ALLEGED IN COUNT 1, SIR, A VIOLATION OF 18 UNITED

4    STATES CODE SECTION 1349, CONSPIRACY TO COMMIT MAIL AND WIRE

5    FRAUD, IT IS ALLEGED, SIR, IN THAT COUNT THAT FROM IN OR ABOUT

6    2009 THROUGH ON OR ABOUT 2012, IN THE NORTHERN DISTRICT OF

7    CALIFORNIA AND ELSEWHERE YOU, CHRISTOPHER LUCK, AND KEITH RODE,

8    AND OTHERS KNOWN AND UNKNOWN TO THE GRAND JURY, DID KNOWINGLY

9    AND INTENTIONALLY CONSPIRE AND AGREED TOGETHER AND WITH EACH

10   OTHER TO COMMIT OFFENSES AGAINST THE UNITED STATES, TO WIT,

11   MAIL FRAUD, IN VIOLATION OF TITLE 18 UNITED STATES SECTION

12   1341, AND, B, WIRE FRAUD IN VIOLATION OF TITLE 18 UNITED STATES

13   CODE SECTION 1343, BY DEVISING A SCHEME AND ARTIFICE TO OBTAIN

14   MONEY BY MEANS OF FALSE AND FRAUDULENT REPRESENTATIONS

15   SPECIFICALLY BY SOLICITING INVESTMENTS UNDER THE FALSE AND

16   FRAUDULENT PRETENSE THAT THE SOLICITED FUNDS WOULD BE INVESTED

17   IN DIVERSIFIED EQUITY TRADING.

18        I'M ALSO GOING TO READ THE MEANS AND METHOD OF THE

19   CONSPIRACY, SIR.

20        AMONG THE MEANS AND METHODS BY WHICH YOU, LUCK, AND RODE

21   CARRIED OUT THIS CONSPIRACY TO DEFRAUD INVESTORS IN THE

22   FOLLOWING:

23        A, MAILING AND OTHERWISE DELIVERING TO INVESTORS THE

24   MARKETING MATERIALS AND OTHER DOCUMENTS THAT CONTAINED

25   MATERIAL, FALSE INFORMATION;

1       B, TRANSMITTING AND CAUSING TO BE TRANSMITTED WIRE

2    TRANSFERS DIVERTING INVESTOR FUNDS FOR UNAUTHORIZED

3    EXPENDITURES SUCH AS INVESTMENTS IN MEDIATILE AND DDNI AND

4    PERSONAL USE;

5       C, MAILING TO INVESTORS DECEPTIVE AND MISLEADING ACCOUNT

6    STATEMENTS WHICH CREATED THE APPEARANCE THAT THEIR INVESTMENTS

7    WERE PERFORMING AND THEIR PRINCIPAL WAS SAFE;

8       D, PAYING INTEREST AND/OR PRINCIPAL WITHDRAWALS TO

9    INVESTORS THAT WERE FUNDED IN MATERIAL PART BY NEW INVESTOR

10    MONEY;

11       E, PROVIDING FALSE TAX AND FINANCIAL INFORMATION TO

12    INVESTORS IN ORDER TO LULL INVESTORS INTO A FALSE SENSE OF

13    SECURITY REGARDING THE SAFETY OF THEIR INVESTMENTS;

14       F, MAKING AT MEETINGS WITH NEW POTENTIAL INVESTORS

15    MATERIALLY FALSE AND MISLEADING STATEMENTS AND OMITTING TO

16    DISCLOSE MATERIAL INFORMATION; AND,

17       G, PAYING THEMSELVES MILLIONS OF DOLLARS THROUGH VARIOUS

18    FORMS OF COMPENSATION ALL IN VIOLATION OF TITLE 18 UNITED

19    STATES CODE SECTION 1349.

20       TO THAT CHARGE, SIR, WHAT IS YOUR PLEA?  IS YOUR PLEA

21    GUILTY OR NOT GUILTY?

22          THE DEFENDANT:  GUILTY, YOUR HONOR.

23          THE COURT:  IT'S ALLEGED IN COUNT 2, SIR, A

24    VIOLATION OF 18 UNITED STATES CODE SECTION 1341, MAIL FRAUD, IT

25    IS ALLEGED THAT ON OR ABOUT THE DATES SET FORTH BELOW IN THE

1    NORTHERN DISTRICT OF CALIFORNIA AND ELSEWHERE, YOU, CHRISTOPHER

2    LUCK, AND KEITH RODE, FOR THE PURPOSE OF EXECUTING THE ABOVE

3    DESCRIBED SCHEME TO DEFRAUD AND ATTEMPTING TO DO SO BY MEANS OF

4    FALSE AND FRAUDULENT MATERIAL REPRESENTATIONS SENT AND CAUSED

5    TO BE SENT THROUGH THE UNITED STATES POSTAL SERVICE THE ITEM

6    DESCRIBED BELOW IN VIOLATION OF TITLE 18 UNITED STATES CODE

7    SECTION 1341.  AND THE ITEM RELATED TO COUNT 2 IS A DATE OF

8    APRIL 27, 2011.  THE ITEM MAILED WAS INVESTOR INITIAL L.B.'S

9    GLR INTEREST STATEMENT ALL IN VIOLATION OF TITLE 18 UNITED

10   STATES CODE SECTION 1341.

11        TO THAT CHARGE, SIR, WHAT IS YOUR PLEA?  IS YOUR PLEA

12   GUILTY OR NOT GUILTY?

13             THE DEFENDANT:  GUILTY, YOUR HONOR.

14             THE COURT:  IT'S ALLEGED, SIR, IN COUNT 27, A

15   VIOLATION OF 15 UNITED STATES CODE SECTIONS 78J, SUBSECTION (B)

16   AND 78FF, 17 C.F.R. SECTIONS 240.10B-5 AND 240.10B-5-2, 18

17   UNITED STATES CODE SECTION 2, SECURITIES FRAUD, IT IS ALLEGED,

18   SIR, THAT ON OR ABOUT 2009 THROUGH 2012 IN THE NORTHERN

19   DISTRICT OF CALIFORNIA AND ELSEWHERE YOU, CHRISTOPHER LUCK, AND

20   KEITH RODE, DID WILLFULLY AND KNOWINGLY, DIRECTLY AND

21   INDIRECTLY, BY USE OF THE MEANS AND INSTRUMENTALITIES OF

22   INTERSTATE COMMERCE, THE MAILS, AND THE FACILITIES OF NATIONAL

23   SECURITY EXCHANGES IN CONNECTION WITH THE PURCHASES AND SALE OF

24   SECURITIES DID USE AND EMPLOY MANIPULATIVE AND DECEPTIVE

25   DEVICES AND CONTRIVANCES AND AIDED AND ABETTED OTHERS IN USING

1    AND EMPLOYING MANIPULATIVE AND DECEPTIVE DEVICES AND

2    CONTRIVANCES IN VIOLATION OF TITLE 15 UNITED STATES CODE

3    SECTIONS 78J, SUBSECTION (B) AND 78FF, AND TITLE 17 CODE OF

4    FEDERAL REGULATIONS SECTIONS 240.10B-5 AND 240.10B-5-2, AND

5    TITLE 18 UNITED STATES CODE SECTION 2 BY,

6         A, EMPLOYING DEVICES, SCHEMES, AND ARTIFICES TO DEFRAUD;

7         B, MAKING UNTRUE STATEMENTS OF MATERIAL FACTS AND FAILING

8    TO STATE MATERIAL FACTS NECESSARY IN ORDER TO MAKE THE

9    STATEMENTS MADE IN THE LIGHT OF THE CIRCUMSTANCES UNDER WHICH

10   THEY WERE MADE NOT MISLEADING; AND,

11        C, ENGAGING IN ACTS, PRACTICES, AND COURSES OF BUSINESS

12   WHICH OPERATED AND WOULD OPERATE AS A FRAUD AND DECEIT UPON

13   PERSONS SPECIFICALLY BY TELLING INVESTORS OR ALLOWING INVESTORS

14   TO BELIEVE THAT THEIR INVESTMENT IN THE FUND WOULD BE USED TO

15   PURCHASE EQUITIES TRADED ON THE NEW YORK STOCK EXCHANGE OR

16   NASDAQ WHEN, IN FACT, THE DEFENDANTS KNEW THAT NO SUCH

17   INVESTMENTS WOULD BE MADE ALL IN VIOLATION OF TITLE 15 UNITED

18   STATES CODE SECTIONS 78J SUBSECTION (B) AND 78FF, TITLE 17 CODE

19   OF FEDERAL REGULATIONS SECTIONS 240.10B-5 AND 240.10B5-2, AND

20   TITLE 18 UNITED STATES CODE SECTION 2.

21        TO THAT CHARGE, SIR, WHAT IS YOUR PLEA?  IS YOUR PLEA

22   GUILTY OR NOT GUILTY?

23             THE DEFENDANT:  GUILTY, YOUR HONOR.

24             THE COURT:  COUNSEL, DO YOU CONCUR IN YOUR CLIENT'S

25   PLEAS?

```
1              MR. WHELAN:  I DO.

2              THE COURT:  AND STIPULATE TO A FACTUAL BASIS FOR

3    EACH PLEA?

4              MR. WHELAN:  I DO.

5              THE COURT:  THE COURT WILL ACCEPT THE PLEA AND FIND

6    THAT THE DEFENDANT HAS MADE A KNOWING AND INTELLIGENT AND FREE

7    AND VOLUNTARILY WAIVER OF CONSTITUTIONAL RIGHTS AND ENTRY OF

8    PLEAS.  THERE HAS BEEN A SHOWING OF A FACTUAL BASIS FOR EACH

9    ELEMENT OF THE OFFENSES, AND THE COURT WILL ORDER THE PLEAS

10   RECORDED AT THIS TIME.

11             I WILL REFER YOU, MR. GERINGER, TO THE PROBATION

12   DEPARTMENT FOR PREPARATION OF A PRESENTENCE REPORT.

13             YOUR LAWYER WILL ESCORT YOU TO THAT OFFICE THIS MORNING TO

14   PREPARE SOME PRELIMINARY AND SIGN SOME PRELIMINARY DOCUMENTS

15   AND INFORMATION.

16             AS TO A DATE FOR SENTENCING, DO COUNSEL HAVE A SUGGESTED

17   DATE?

18             MR. WHELAN:  WE DO, AND WE HAVE DISCUSSED IT WITH

19   YOUR CLERK.  WE WOULD ASK FOR A DATE OF OCTOBER 20TH.

20             THE COURT:  OCTOBER 20TH AT 1:30?

21             MR. WHELAN:  YES.

22             THE COURT:  AND, MS. GARCIA, WE CAN ACCOMMODATE

23   THAT?

24             THE CLERK:  YES.

25             THE COURT:  ALL RIGHT.  WE'LL CONTINUE THIS CASE FOR
```

1    SENTENCING TO OCTOBER 20TH, OCTOBER 20TH AT 1:30.

2          MR. SCHENK, IT HAS COME TO MY ATTENTION THAT THERE MAY BE

3    INDIVIDUALS OR VICTIMS WHO WISH TO BE HEARD TODAY?

4          MR. SCHENK:  YES, THAT'S CORRECT, YOUR HONOR.  AS

5    THE COURT CAN SEE THERE ARE MANY VICTIMS PRESENT IN THE COURT

6    TODAY.  I UNDERSTAND THAT A HANDFUL OF THE VICTIMS WHO ARE

7    PRESENT TODAY, IF THE COURT WOULD BE SO KIND, WOULD LIKE TO

8    ADDRESS THE COURT.

9          THE COURT:  ALL RIGHT.  WELL, COUNSEL, I'M INCLINED

10   TO ALLOW THESE INDIVIDUALS TO BE HEARD THIS MORNING.  OF

11   COURSE, THEY NOW KNOW, EVERYONE KNOWS THE SENTENCING DATE THAT

12   I HAVE INDICATED OCTOBER 20TH, OCTOBER 20TH, IS THE DATE WHEN

13   VICTIMS CAN COME FORTH ALSO AND BE HEARD IF THEY WISH.

14         BUT IF THERE ARE PEOPLE HERE TODAY THAT WISH TO BE HEARD,

15   I CAN CERTAINLY HEAR FROM THEM.

16         SO, COUNSEL, WHY DON'T I ASK YOU TO HAVE A SEAT THEN AT

17   COUNSEL TABLE AND THEN I'LL CALL THE INDIVIDUALS UP AS I

18   UNDERSTAND.

19         MR. SCHENK:  THANK YOU.

20         MR. WHELAN:  VERY WELL.

21         THE COURT:  I DO HAVE A LIST OF INDIVIDUALS.  AND

22   LET ME GO DOWN THE LIST OF NAMES THAT I HAVE.  PAUL BROWNE.  IS

23   PAUL BROWNE PRESENT?

24         MR. BROWNE:  YES, YOUR HONOR.

25         THE COURT:  YES, SIR.  WOULD YOU LIKE TO BE HEARD

1    THIS MORNING, SIR?

2              MR. BROWNE:  YES, YOUR HONOR.

3              THE COURT:  PLEASE COME FORWARD, SIR.  PLEASE COME

4    TO THE LECTERN THERE AND IF YOU WOULD STATE YOUR NAME THEN AND

5    SPELL IT, PLEASE.

6              MR. BROWNE:  YES, YOUR HONOR.  MY NAME IS PAUL D, AS

7    IN DENNIS, BROWNE.  BROWNE IS SPELLED WITH AN "E" ON THE END.

8    MY FAMILY NEVER COULD SPELL VERY WELL SO.

9              THE COURT:  ALL RIGHT.  SIR, WHAT IS IT THAT YOU

10   WOULD LIKE ME TO KNOW THIS MORNING?

11             MR. BROWNE:  SIR, I'M PRETTY UNFAMILIAR WITH THE

12   COURTROOM PROCEDURE SO I THANK YOU FOR ALLOWING ME TO ADDRESS

13   THE COURT.

14             THE COURT:  OF COURSE.

15             MR. BROWNE:  I WOULD JUST LIKE YOU TO KNOW WHAT OUR

16   POSITION WAS WHEN THIS OCCURRED.  I WAS, DUE TO MY CAREER

17   CHOICE, I WAS FORCED TO RETIRE AT AGE 60 BACK IN 1996 AND AT

18   THAT POINT MY TOTAL RETIREMENT INCOME WOULD HAVE BEEN ABOUT

19   $40,000 PRIOR TO SOCIAL SECURITY.

20        I WAS FORTUNATE TO HAVE AN IRA OF A FAIRLY GOOD SIZE, AND

21   I WAS ABLE TO MANAGE THAT FOR 11 YEARS AND THAT INCREASED MY

22   INCOME BY A GOOD 50 PERCENT.

23        BUT IN 2008 WHEN THE BARE MARKET OCCURRED, I JUST DIDN'T

24   HAVE THE CONFIDENCE TO INVEST.  SO GOOD FRIENDS, MANY GOOD

25   FRIENDS, MANY INTELLIGENT, SUCCESSFUL GOOD FRIENDS PUT ME ON TO

1    GLR GROWTH FUND, AND I WAS IMPRESSED BY WHAT THEY HAD TO SAY.

2         WE INVESTED MY ENTIRE IRA BEGINNING IN 2009 WITH A PORTION

3    OF IT.  AND I ASKED THE DEFENDANT TO PLEASE EXPLAIN TO ME HOW

4    YOU CAN DO THIS BECAUSE I CAN'T EXPLAIN IT TO MY FAMILY AND

5    FRIENDS, AND I DEPENDED UPON THAT IN ORDER TO HELP MY FOUR

6    GRANDKIDS' EDUCATION IN THE FUTURE.

7         AND I WAS TOLD BY THE DEFENDANT, WELL, I CAN MAKE A PROFIT

8    IN ANY KIND OF A MARKET BECAUSE I JUST BUY AND SELL OPTIONS,

9    AND I HARDLY EVER HOLD ONTO STOCK.  THAT WAS THE ONE BIT OF

10   TRUTH THAT THE DEFENDANT WAS ABLE TO TELL ME BECAUSE AT THAT

11   POINT I LATER LEARNED THAT HE WAS NOT EVEN TRADING.

12        OUR LOSS REPRESENTS WELL OVER HALF OF OUR NET WORTH AND

13   OVER 40 PERCENT OF OUR PROJECTED ANNUAL INCOME BACK AT THAT

14   TIME.

15        I'M NOW 78 YEARS OLD AND IF WE HAD A SERIOUS EMERGENCY, I

16   WOULD HAVE TO DEPEND UPON MY CHILDREN TO SUPPORT ME RATHER THAN

17   THE OTHER WAY AROUND.

18        SO AFTER 50 YEARS OF WORK AND SAVINGS, IT ALL VANISHED

19   OVER NIGHT.  AND I REALIZE THAT THIS PLEA IS REALLY A PLEA

20   BARGAIN.  AND IF IT WERE ONLY MY FAMILY THAT WAS INJURED, I CAN

21   SEE MAYBE SOME LENIENCY IN THE SENTENCING BUT, YOUR HONOR,

22   WE'RE TALKING ABOUT WELL OVER 200 PEOPLE AND NOT JUST

23   INDIVIDUALS BUT MULTIPLY THAT BY FIVE OR SIX TIMES OF FAMILY

24   MEMBERS THAT HAVE BEEN HURT.

25        AS A CHRISTIAN, I'M BOUND TO FORGIVE THE DEFENDANT BUT

1    JUSTICE SHOULD PREVAIL.

2              THE COURT:  THANK YOU, SIR.

3              MR. BROWNE:  THANK YOU, YOUR HONOR.

4              THE COURT:  YOU'RE WELCOME.  DAVID BYRON.  IS

5    MR. BYRON PRESENT?

6              MR. BYRON:  YES, YOUR HONOR.

7              THE COURT:  GOOD MORNING, SIR.  IF YOU COULD PLEASE

8    STATE YOUR NAME AND SPELL IT, PLEASE.

9              MR. BYRON:  IT'S DAVID BYRON.  LAST NAME IS

10   B-Y-R-O-N.

11             THE COURT:  YES, SIR.  WHAT IS IT THAT YOU WOULD

12   LIKE ME TO KNOW?

13             MR. BYRON:  THANK YOU, JUDGE DAVILA, FOR THE

14   OPPORTUNITY TO ADDRESS THE COURT TODAY.

15        FIRST OF ALL, I WOULD LIKE TO ADDRESS THE OTHER VICTIMS

16   HERE.  ALTHOUGH I HAVE ONLY PERSONALLY MET A FEW OF YOU, WE

17   HAVE ALL SHARED A COMMON BOND BECAUSE OF THIS TRAGEDY.  OUR

18   COMMUNICATION AND SUPPORT WITH ONE ANOTHER HAS HELPED ME COPE

19   WITH THIS LOSS.  I'M GRATEFUL TO HAVE THE COLLECTIVE SUPPORT OF

20   ALL OF YOU.  YOU ARE AN AMAZING GROUP OF PEOPLE, AND I AM

21   DEEPLY SORRY FOR YOUR LOSS.

22        IT GIVES ME SOME COMFORT THAT THE DEFENDANT HAS PLEADED

23   GUILTY TO THE COUNTS AGAINST HIM.  BECAUSE OF THE DEFENDANT'S

24   LIES, ARROGANCE, AND RECKLESSNESS, MILLIONS OF DOLLARS HAVE

25   BEEN LOST.  MY PERSONAL LOSS IS OVER $200,000.

```
1          BECAUSE OF THIS I HAVE LOST MY RETIREMENT AND AT 52

2    PERHAPS THE ABILITY TO FULLY RECOVER IN THE FUTURE.

3          I FEEL BETRAYED BY GLR GROWTH FUND, I FEEL BEATEN AND I

4    FEEL VERY INSECURE ABOUT MY FINANCIAL FUTURE.  I'M A GUITAR

5    INSTRUCTOR AND MUSICIAN OF 30 YEARS.  I LIVE ON A MODEST INCOME

6    SIMILAR TO THAT OF A SCHOOL TEACHER BUT BEING SELF-EMPLOYED

7    I'VE HAD TO SAVE FOR MY OWN RETIREMENT.  MY STORY NOW MAY VERY

8    WELL BE A STORY OF WHAT COULD HAVE BEEN AND SHOULD HAVE BEEN.

9          I'M SURE NOW THAT MR. GERINGER HAS TOLD MANY LIES AND

10   WHETHER OR NOT HE BELIEVED THEM TO BE TRUE, OUR FINANCIAL

11   STATEMENTS CERTAINLY ARE NOT.

12         I'M NOT SURE WHAT KIND OF DEAL, IF ANY, HAS BEEN MADE

13   BETWEEN THE DEFENDANT AND THE DEPARTMENT OF JUSTICE REGARDING

14   THIS CASE, BUT I UNDERSTAND THAT YOU, JUDGE DAVILA, HAVE THE

15   POWER TO SERVE THE KIND OF SENTENCE THAT TRULY FITS THE

16   SEVERITY OF THESE CRIMES, AND I HOPE YOU WILL DO THAT.  THANK

17   YOU.

18              THE COURT:  THANK YOU, SIR.

19         CHRIS DAY.  IS CHRIS DAY PRESENT?  GOOD MORNING, SIR.

20              MR. DAY:  GOOD MORNING.

21              THE COURT:  IF YOU COULD PLEASE STATE YOUR NAME AND

22   SPELL IT, PLEASE.

23              MR. DAY:  MY NAME IS CHRIS DAY.  C-H-R-I-S.  AND

24   LAST NAME IS DAY, D-A-Y.

25              THE COURT:  THANK YOU.  WHAT IS IT THAT YOU WOULD
```

1    LIKE ME TO KNOW, SIR?

2              MR. DAY:  I HAVE A FEW COMMENTS IF I MAY.

3              THE COURT:  YES.

4              MR. DAY:  I'M A LONG-TIME FRIEND OF JOHN'S.  I AM

5    ACTUALLY FOUNDER OF ONE OF GLR'S PORTFOLIO COMPANIES THAT WAS

6    SOLD IN SEPTEMBER OF 2009.

7         I HAVE LIVED IN SANTA ROSA FOR 36 YEARS.  AND MY WIFE,

8    BONNIE, AND I HAVE BECAME INVESTORS IN GLR ABOUT FOUR YEARS

9    AGO.

10             MY PURPOSE FOR BEING HERE IN COMMENTING ON THE CHANGE OF

11   PLEA IS IN THE HOPE THAT IN SOME WAY POSSIBLE, IN ANY WAY

12   POSSIBLE, TO BE PART OF THE START OF THE HUMAN PROCESS FOR ALL

13   THAT HAS TRANSPIRED.

14             IN SHORT, I'M HOPEFUL THAT THE CHANGE IN PLEA CAN FINALLY

15   JUST MAYBE BEGIN THE HEELING PROCESS FOR GLR INVESTORS AND THE

16   LARGER SCOTTS VALLEY COMMUNITY AND FOR JOHN AND FOR HIS FAMILY.

17             I DON'T KNOW THE DETAILS AND NUANCES OF THE LEGAL

18   SITUATION AND HAVE NO INTEREST IN WEIGHING IN REGARDING WHAT

19   JOHN DID OR DIDN'T DO AND HIS LEVEL OF GUILT OR THE UNDERLYING

20   MOTIVATIONS FOR HIS ACTIONS.  I WON'T EXPLAIN MY PERSONAL HURT,

21   FINANCIAL LOSS OR PROFOUND DISAPPOINTMENT IN WHAT MY FRIEND HAS

22   DONE.  THEY ARE LESS FINANCIAL IN NATURE AND MORE PERSONAL BUT

23   THEY ARE SUBSTANTIAL.

24             JOHN AND I FIRST MET IN COLLEGE AT CAL IN THE EARLY 1980'S

25   WHEN WE BOTH PLEDGED TO THE SAME FRATERNITY.  WE QUICKLY BECAME

1    VERY CLOSE FRIENDS.

2        DURING COLLEGE I KNEW JOHN AS A YOUNG MAN OF DEEP

3    CHARACTER AND INTEGRITY.  JOHN WAS RESPECTED BY HIS FRATERNITY

4    BROTHERS AND TEAMMATES IN COLLEGE ATHLETICS AND WAS PUBLICLY

5    HONORED WITH VERY PRESTIGIOUS AWARDS CENTERED ON PERSONAL

6    CHARACTER.

7        AS LIFE GOES ON MANY OF US DEVELOP VERY MANY LEVELS OF

8    FRIENDSHIP BUT USUALLY PEOPLE DEVELOP ONLY A FEW VERY CLOSE

9    RELATIONSHIPS.  MOST OF US ONLY HAVE A HANDFUL OF SUCH FRIENDS

10   DURING A LIFETIME.

11       JOHN AND I WERE LIKE THAT.  BY THE TIME WE GRADUATED, JOHN

12   AND I WERE LIKE BROTHERS.

13       AFTER COLLEGE I WENT THROUGH A VERY DIFFICULT PERIOD IN MY

14   LIFE.  I WAS HURT VERY DEEPLY BY OTHERS AND IN TURN HURT MANY

15   PEOPLE.

16       IT WAS NOT AN EASY-TO-GET-OVER TYPE OF HURT OR TIME HEALS

17   ALL WOUNDS KIND OF PAIN.  IT WAS MAJOR HURT THAT TIME WOULDN'T

18   CURE.  I WAS VERY DISSOLUTIONED AND STUCK FOR MANY YEARS.  IT

19   WAS THAT PERIOD OF MY LIFE THAT I DEVELOPED A DEEP RESPECT FOR

20   OTHERS WITH DEEP UNRESOLVED PERSONAL PAIN.  I THINK MANY GLR

21   INVESTORS MIGHT FIT INTO THAT CAMP TODAY.

22       FOR ALL OF US HERE TODAY, I HOPE JOHN'S CHANGE OF PLEA CAN

23   JUST MAYBE OPEN DOORS FOR FORGIVENESS, GENUINE FORGIVENESS TO

24   START.

25       FOR JOHN I TRUST YOUR CHANGE OF PLEA COMES FROM THE HEART.

1    IF SO, I HOPE YOU CAN BEGIN YOUR OWN PROCESS OF HEALING.  THIS

2    IS NOT A HEARING ON THE SENTENCE PER SE, AND I HONESTLY HAVE NO

3    OPINION ON THE SUBJECT AND WILL REPRESENT JUSTICE IN THIS

4    SITUATION.  MY GREATER CONCERN IS FOR WHAT HAPPENS AFTER THE

5    VERDICT AND SENTENCE IS HANDED DOWN.

6         FAITH HAS PLAYED AN ESSENTIAL PART IN BOTH OF OUR LIVES IN

7    COLLEGE.  JOHN, I WOULD HOPE THAT YOU WOULD ACCEPT WHATEVER

8    SENTENCE IS GIVEN AS FROM GOD AND SUITABLE FOR WHAT IS BEST

9    RIGHT NOW.

10        AS IT SAYS IN PROVERBS, "THE HEART OF THE KING IS THE IN

11   HAND OF GOD.  HE TURNS IT WHICHEVER WAY HE WANTS."

12        ALTHOUGH BONNIE AND I FEEL HORRIBLY WRONGED BY YOUR

13   ACTIONS, KNOW THAT WHATEVER THE SENTENCE, BONNIE AND I FORGIVE

14   YOU.  WE FEEL INCREDIBLE SYMPATHY FOR THE OTHER GLR INVESTORS

15   WHO HAVE SUFFERED.  MY HOPE AND THOUGHTS HERE TODAY HOPEFULLY

16   CAN HELP PEOPLE PROCESS THEIR PAIN AND START TO PUT THE PAST

17   BEHIND THEM.

18        THE COURT:  THANK YOU, SIR.

19        BRIAN KEENEY.  GOOD MORNING, SIR.

20        IF YOU COULD PLEASE STATE YOUR NAME AND SPELL IT, PLEASE.

21        MR. KEENEY:  BRIAN KEENEY.  B-R-I-A-N, K-E-E-N-E-Y.

22        THE COURT:  THANK YOU.  WHAT IS THIS THAT YOU WOULD

23   LIKE ME TO KNOW, SIR?

24        MR. KEENEY:  THANK YOU FOR THE OPPORTUNITY TO SPEAK

25   THIS MORNING.

1           THE COURT:  YOU'RE WELCOME.

2           MR. KEENEY:  JOHN HURT US, MY FAMILY, MY WIFE AND MY

3   TWO DAUGHTERS BADLY BOTH EMOTIONALLY AND FINANCIALLY.

4           FINANCIALLY, WE LOST NEARLY ALL OF OUR SAVINGS.

5   EMOTIONALLY, THE DAY THAT WE FOUND OUT THAT WE HAD LOST THOSE

6   SAVINGS WAS THE DUE DATE FOR MY SECOND DAUGHTER, AND MY WIFE

7   WAS IMMINENT WITH THIS.  AND I HAVE NEVER BEEN SO TERRIFIED IN

8   MY LIFE AS TO WHEN I HAD TO HANG UP THE PHONE AND WALK OVER TO

9   HER AND GIVE HER THIS NEWS.

10          AND THANKFULLY EVERYBODY TURNED OUT OKAY IN ALL OF THAT.

11  IT WAS A DIFFICULT BIRTH.  WE'RE PART OF THE BRIDGES VERSUS

12  GERINGER AND SANTA CRUZ COUNTY BANK CIVIL SUIT, AND WE'RE

13  HOPING THAT JOHN AND THE OTHER DEFENDANTS CAN HELP OUR

14  ATTORNEYS FOLLOW THE MONEY AND FIGURE OUT EXACTLY WHAT

15  HAPPENED.  THE PAPERWORK HAS APPARENTLY BEEN SCATTERED AT BEST.

16          AND WE HOPE THAT THE COURT CAN ALSO IMPACT SENTENCING

17  DEPENDING UPON THEIR LEVEL OF COOPERATION.  CERTAINLY WE HOPE

18  THAT A JUST PUNISHMENT IS HANDED DOWN BUT ALSO WE HOPE FOR

19  COOPERATION AND SOME RECOVERY OF FUNDS.

20          SO THANK YOU FOR YOUR TIME, YOUR HONOR.

21          THE COURT:  YOU'RE VERY WELCOME.  THANK YOU.

22  ROB STUART.  IS ROB STUART PRESENT?

23  GOOD MORNING, SIR?

24          MR. STUART:  GOOD MORNING.

25          THE COURT:  IF YOU WOULD PLEASE STATE YOUR NAME AND

1   SPELL IT, PLEASE.

2              MR. STUART: MY NAME IS ROB STUART, S-T-U-A-R-T.  I,

3   TOO, WOULD LIKE TO THANK YOU FOR ALLOWING US TO SPEAK TODAY.

4   I, TOO, AM A VICTIM OF THE GLR FRAUD.

5        TO SAY IT'S BEEN DEVASTATING IS AN UNDERSTATEMENT.  WE HAD

6   ALL OF OUR LIFE SAVINGS, OUR KIDS' COLLEGE FUNDS, AND MY

7   RETIREMENT MONEY WRAPPED UP IN OUR INVESTMENT THERE.

8        AND I'VE BEEN THROUGH SOME OF THE TOUGHEST THINGS THAT

9   LIFE CAN HANDLE.  I LOST TWO KIDS 13 YEARS APART, WHICH WAS

10  DEVASTATING TO ME AND PROBABLY THE HARDEST THING I'LL EVER GO

11  THROUGH IN LIFE, BUT IN SOME RESPECTS THIS WAS JUST AS

12  DIFFICULT IN THE FACT THAT THERE WAS SOMEBODY WILLFULLY

13  BETRAYING US AND DEFRAUDING US.

14       IT'S HAD AN EMOTIONAL, FINANCIAL IMPACT ON US THAT WORDS

15  CAN'T DESCRIBE AND A CERTAIN SENSE OF LOSS OF INNOCENCE WHEN

16  HAVING TO EXPLAIN TO MY THEN SIXTH GRADE SON WHAT HAD HAPPENED

17  AND WHEN HE'S LOOKING AT ME AND SAYING DOES THAT MEAN I'M NOT

18  GOING TO GO TO COLLEGE?  AND HAVING TO EXPLAIN THOSE HARD

19  THINGS TO YOUR KIDS IS REALLY DIFFICULT.

20       AS THE OTHERS SAID, I'M COMMANDED TO FORGIVE AND I WILL

21  FORGIVE THESE PEOPLE IN TIME, BUT THAT DOESN'T MEAN THAT I

22  DON'T WANT JUSTICE.

23       AND I'M ONE OF THE PEOPLE INVOLVED IN A CIVIL MATTER, AND

24  I'M ASKING THAT YOU RESERVE YOUR JUDGMENT ON SENTENCING UNTIL

25  THE 11TH HOUR BASED ON THE NEXT FEW MONTHS OF COOPERATION.  AND

```
1      WE HOPE THAT JOHN WILL CONTINUE TO COOPERATE WITH THE FEDERAL

2      ATTORNEYS AND THE ATTORNEYS IN THE CIVIL MATTER.

3           THANK YOU.

4                THE COURT:  THANK YOU, SIR.  JACKSON SCHAEFER

5      JUNGER.

6                MR. JUNGER:  JUNGER, YOUR HONOR.

7                THE COURT:  JUNGER.  THANK YOU, SIR.

8                MR. JUNGER:  GOOD MORNING, YOUR HONOR.

9                THE COURT:  GOOD MORNING.  IF YOU COULD PLEASE STATE

10     YOUR NAME AND SPELL IT, PLEASE.

11               MR. JUNGER:  JACKSON SCHAEFER JUNGER.  JACKSON,

12     J-A-C-K-S-O-N.  SCHAEFER, S-C-H-A-E-F-E-R.  JUNGER,

13     J-U-N-G-E-R.

14               THE COURT:  THANK YOU.  WHAT WOULD YOU LIKE ME TO

15     KNOW?

16               MR. JUNGER:  FIRST OF ALL, THANK YOU FOR THE

17     OPPORTUNITY.  I'M HERE AS MYSELF AS A VICTIM AND AS WELL AS MY

18     PARENTS CARL AND DIANE SCHAEFER JUNGER.

19          AND I PREPARED A STATEMENT THAT MAY BE BETTER ADDRESSED AT

20     A LATER DATE, BUT I'D LIKE TO READ THE LAST BIT.  I'M NOT SURE

21     HOW THIS WILL END UP, BUT I DO KNOW WHO IS RESPONSIBLE AND I

22     ASK THE COURT ON BEHALF OF MYSELF AND MY FAMILY TO IMPLORE GLR

23     TO ASSIST THEIR VICTIMS IN UNDERSTANDING ON HOW THEY

24     PERPETRATED THIS FRAUD.  WITH GLR TO ASSIST THEIR VICTIMS, I

25     ASK THE COURT ON BEHALF OF MY FAMILY AND MYSELF TO MAXIMIZE
```

1    THEIR SENTENCE IF THEY REFUSE TO BE COOPERATIVE.

2         THANK YOU FOR YOUR TIME.

3              THE COURT:  THANK YOU, SIR.

4         IS THERE ANYONE ELSE?  I THINK THAT EXHAUSTS THE LIST THAT

5    I HAVE BEFORE ME.  IS THERE ANYONE ELSE WHO WISHES TO SPEAK?

6    PLEASE STAND AND COME FORWARD IF YOU WISH.

7         ALL RIGHT.  THANK YOU.  I SEE NO OTHER RESPONDENTS.

8         ANYTHING FURTHER?

9              MR. SCHENK:  YOUR HONOR, THERE ARE REMAINING COUNTS,

10   AND WE WILL BE MOVING TO DISMISS THE REMAINING COUNTS AT

11   SENTENCING BUT BECAUSE WE DON'T INTEND TO PROCEED TO TRIAL

12   AGAINST MR. GERINGER ON THE REMAINING COUNTS WE ASK THAT YOU

13   VACATE THE PRETRIAL AND TRIAL DATES AS TO THIS DEFENDANT.

14             THE COURT:  THANK YOU.  THOSE WILL BE VACATED.  AND

15   ANY OTHER COUNTS TO THIS DEFENDANT MOTIONS TO DISMISS WILL BE

16   TAKEN UNDER SUBMISSION UNTIL THE TIME OF SENTENCING.

17             MR. SCHENK:  THANK YOU, YOUR HONOR.

18             THE COURT:  YOU'RE WELCOME.  AND THE MATTER IS SET

19   FOR SENTENCING ON OCTOBER 20TH, OCTOBER 20TH AT 1:30, AND WE'LL

20   SEE YOU THEN.

21             MR. SCHENK:  THANK YOU.

22             MR. WHELAN:  THANK YOU.

23        (COURT CONCLUDED AT 12:10 P.M.)

24

25

1

2

3                    CERTIFICATE OF REPORTER

4

5

6

7       I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8    STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9    280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10   CERTIFY:

11      THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16             IRENE RODRIGUEZ, CSR, CRR
               CERTIFICATE NUMBER 8076
17

18
               DATED:   JUNE 11, 2014
19

20

21

22

23

24

25

1  JINA L. CHOI (Admitted in New York)
   MICHAEL S. DICKE (Cal. Bar No. 158187)
2  SHEILA E. O'CALLAGHAN (Cal. Bar No. 131032)
     ocallaghans@sec.gov
3  ROBERT J. DURHAM (Admitted to the New York Bar)
     durhamr@sec.gov
4
   Attorneys for Plaintiff
5  SECURITIES AND EXCHANGE COMMISSION
   44 Montgomery Street, Suite 2800
6  San Francisco, California 94104
   Telephone:  (415) 705-2500
7  Facsimile:  (415) 705-2501

8

9                    UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                         SAN JOSE DIVISION

12

13  SECURITIES AND EXCHANGE COMMISSION,        Case No. CV12-2663 (EJD)

14              Plaintiff,

15        vs.

16  GLR CAPITAL MANAGEMENT, LLC, GLR          **CONSENT OF**
    ADVISORS, LLC, JOHN A. GERINGER,          **GLR ADVISORS, LLC**
17  CHRISTOPHER A. LUCK and KEITH E. RODE

18              Defendants

19        and

20  GLR GROWTH FUND, L.P.,

21              Relief Defendant.

22

23

24

25

26

27

28

1.      Defendant GLR Advisors, LLC ("Defendant") acknowledges having been served with the complaint in this action, enters a general appearance, and admits the Court's jurisdiction over Defendant and over the subject matter of this action.

2.      Without admitting or denying the allegations of the complaint (except as to personal and subject matter jurisdiction, which Defendant admits), Defendant hereby consents to the entry of the Final Judgment as to Defendants John A. Geringer and GLR Advisors, LLC in the form attached hereto (the "Final Judgment") and incorporated by reference herein, which, among other things:

(a)      permanently restrains and enjoins Defendant from violation of Section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a), Sections 10(b) and 26 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b) and 78z, and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5, and Sections 206(1), 206(2), and 206(4) of the Investment Advisers Act of 1940 ("Advisers Act"), 15 U.S.C. §§ 80b-6(1), 80b-6(2), and 80b-6(4), and Rule 206(4)-8 thereunder, 17 C.F.R. § 275.206(4)-8;

(b)      orders Defendant to pay disgorgement, on a joint and several basis with John A. Geringer, in the amount of $2,170,589, plus prejudgment interest thereon in the amount of $601,886; and

(c)      does not impose a civil monetary penalty.

3.      Defendant waives the entry of findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

4.      Defendant waives the right, if any, to a jury trial and to appeal from the entry of the Final Judgment.

5.      Defendant enters into this Consent voluntarily and represents that no threats, offers, promises, or inducements of any kind have been made by the Commission or any member, officer, employee, agent, or representative of the Commission to induce Defendant to enter into this Consent.

6.      Defendant agrees that this Consent shall be incorporated into the Final Judgment with the same force and effect as if fully set forth therein.

7.      Defendant will not oppose the enforcement of the Final Judgment on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waives any objection based thereon.

8.      Defendant waives service of the Final Judgment and agrees that entry of the Final Judgment by the Court and filing with the Clerk of the Court will constitute notice to Defendant of its terms and conditions. Defendant further agrees to provide counsel for the Commission, within thirty days after the Final Judgment is filed with the Clerk of the Court, with an affidavit or declaration stating that Defendant has received and read a copy of the Final Judgment.

9.      Consistent with 17 C.F.R. 202.5(f), this Consent resolves only the claims asserted against Defendant in this civil proceeding. Defendant acknowledges that no promise or representation has been made by the Commission or any member, officer, employee, agent, or representative of the Commission with regard to any criminal liability that may have arisen or may arise from the facts underlying this action or immunity from any such criminal liability. Defendant waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein. Defendant further acknowledges that the Court's entry of a permanent injunction may have collateral consequences under federal or state law and the rules and regulations of self-regulatory organizations, licensing boards, and other regulatory organizations. Such collateral consequences include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a member of, a self-regulatory organization. This statutory disqualification has consequences that are separate from

any sanction imposed in an administrative proceeding.  In addition, in any disciplinary proceeding before the Commission based on the entry of the injunction in this action, Defendant understands that it shall not be permitted to contest the factual allegations of the complaint in this action.

10.    Defendant understands and agrees to comply with the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegations in the complaint or order for proceedings." 17 C.F.R. § 202.5.  In compliance with this policy, Defendant agrees: (i) not to take any action or to make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis; and (ii) that upon the filing of this Consent, Defendant hereby withdraws any papers filed in this action to the extent that they deny any allegation in the complaint.  If Defendant breaches this agreement, the Commission may petition the Court to vacate the Final Judgment and restore this action to its active docket.  Nothing in this paragraph affects Defendant's: (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party.

11.    Defendant hereby waives any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to seek from the United States, or any agency, or any official of the United States acting in his or her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees, expenses, or costs expended by Defendant to defend against this action.  For these purposes, Defendant agrees that Defendant is not the prevailing party in this action since the parties have reached a good faith settlement.

1

2        12.    Defendant agrees that the Commission may present the Final Judgment to the Court

3   for signature and entry without further notice.

4        13.    Defendant agrees that this Court shall retain jurisdiction over this matter for the

5   purpose of enforcing the terms of the Final Judgment.

6

7

8                                  GLR Advisors, LLC

9                          By:  _____
                                   John A. Geringer, its Managing Member

10

11  State of California

12  County of _SANTA CRUZ_

13  Subscribed and sworn to (or affirmed) before me on this _28_ day of _August_, 2014, by John

14  A. Geringer, proved to me on the basis of satisfactory evidence to be the person who appeared before

15  me.

16  Notary Public Signature _____

17  (Seal)

18

19

20                          SAGAR M. PATEL
                            Commission # 2036590
21                          Notary Public - California
                            Santa Cruz County
                            My Comm. Expires Aug 11, 2017

22

23

24

25

26

27

28

CONSENT OF GLR ADVISORS, LLC                    4                    CV12-2663 (EJD)

1    JINA L. CHOI (Admitted to the New York Bar)
      MICHAEL S. DICKE (Cal. Bar No. 158187)
2    SHEILA E. O'CALLAGHAN (Cal. Bar No. 131032)
      ocallaghans@sec.gov
3    ROBERT J. DURHAM (Admitted to the New York Bar)
      durhamr@sec.gov
4
    Attorneys for Plaintiff
5    SECURITIES AND EXCHANGE COMMISSION
      44 Montgomery Street, Suite 2800
6    San Francisco, California 94104
      Telephone:  (415) 705-2500
7    Facsimile:  (415) 705-2501

8

9             **UNITED STATES DISTRICT COURT**

10            **NORTHERN DISTRICT OF CALIFORNIA**

11               **SAN JOSE DIVISION**

12

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. CV12-2663 (EJD) |
|         Plaintiff, | |
|     vs. | |
| GLR CAPITAL MANAGEMENT, LLC, GLR ADVISORS, LLC, JOHN A. GERINGER, CHRISTOPHER A. LUCK  and KEITH E. RODE | **[PROPOSED] FINAL JUDGEMENT AS TO DEFENDANTS JOHN A. GERINGER AND GLR ADVISORS, LLC** |
|         Defendants | |
|     and | |
| GLR GROWTH FUND, L.P., | |
|         Relief Defendant. | |

1

2      The Securities and Exchange Commission ("Commission") having filed a Complaint and

3  Defendants John A. Geringer and GLR Advisors, LLC (collectively, "Defendants") having entered a

4  general appearance; consented to the Court's jurisdiction over them and the subject matter of this

5  action; consented to entry of this Final Judgment as to Defendants John A. Geringer and GLR

6  Advisors, LLC ("Final Judgment"); waived findings of fact and conclusions of law; and waived any

7  right to appeal from this Final Judgment:

8                                           I.

9      IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendants and their

10  agents, servants, employees, attorneys, and all persons in active concert or participation with them

11  who receive actual notice of this Final Judgment by personal service or otherwise are permanently

12  restrained and enjoined from violating, directly or indirectly, Section 10(b) of the Securities

13  Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated

14  thereunder [17 C.F.R. § 240.10b-5], by using any means or instrumentality of interstate commerce, or

15  of the mails, or of any facility of any national securities exchange, in connection with the purchase or

16  sale of any security:

17          (a)      to employ any device, scheme, or artifice to defraud;

18          (b)      to make any untrue statement of a material fact or to omit to state a material fact

19                   necessary in order to make the statements made, in the light of the circumstances

20                   under which they were made, not misleading; or

21          (c)      to engage in any act, practice, or course of business which operates or would

22                   operate as a fraud or deceit upon any person.

23                                          II.

24      IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendants and

25  their agents, servants, employees, attorneys, and all persons in active concert or participation with

26  them who receive actual notice of this Final Judgment by personal service or otherwise are

27  permanently restrained and enjoined from violating Section 17(a) of the Securities Act of 1933

28  ("Securities Act") [15 U.S.C. § 77q(a)] in the offer or sale of any security by the use of any means or

1  instruments of transportation or communication in interstate commerce or by use of the mails,

2  directly or indirectly:

3    (a)    to employ any device, scheme, or artifice to defraud;

4    (b)    to obtain money or property by means of any untrue statement of a material fact or any

5           omission of a material fact necessary in order to make the statements made, in light of

6           the circumstances under which they were made, not misleading; or

7    (c)    to engage in any transaction, practice, or course of business which operates or would

8           operate as a fraud or deceit upon the purchaser.

9                                                III.

10     IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendants

11  and their agents, servants, employees, attorneys, and all persons in active concert or participation

12  with them who receive actual notice of this Final Judgment by personal service or otherwise are

13  permanently restrained and enjoined from violating Sections 206(1) or 206(2) of the Investment

14  Advisers Act of 1940 ("Advisers Act") [15 U.S.C. § 80b-6(l), (2)] by, while acting as an

15  investment adviser, using the mails or any means or instrumentality of interstate commerce:

16    (a)    employing any device, scheme, or artifice to defraud any client or prospective

17           client; or

18    (b)    engaging in any transaction, practice, or course of business which operates as a

19           fraud or deceit upon any client or prospective client.

20                                                IV.

21     IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendants and

22  their agents, servants, employees, attorneys, and all persons in active concert or participation with

23  them who receive actual notice of this Final Judgment by personal service or otherwise are

24  permanently restrained and enjoined from violating Section 206(4) the Advisers Act [15 U.S.C.

25  § 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. 275.206(4)-8] by, while acting as an investment

26  adviser, using the mails or any means or instrumentality of interstate commerce:

27    (a)    engaging in any act, practice, or course of business which is fraudulent, deceptive, or

28           manipulative; or

(b)  while acting as an investment adviser to a pooled investment vehicle:

(1)  making any untrue statement of a material fact or omitting to state a material fact necessary to make the statements made, in the light of the circumstances under which they were made, not misleading, to any investor or prospective investor in the pooled investment vehicle; or

(2)  otherwise engaging in any act, practice, or course of business that is fraudulent, deceptive, or manipulative with respect to any investor or prospective investor in the pooled investment vehicle.

V.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendants and their agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating Section 26 of the Exchange Act [15 U.S.C. § 78z] by making or causing to be made, to any prospective purchaser or seller of a security any representation that any action or failure to act by the Commission or the Board of Governors of the Federal Reserve System, in the administration of the Exchange Act shall be construed to mean that the particular authority has in any way passed upon the merits of, or given approval to, any security or any transaction or transactions therein, or any action or failure to act with regard to any statement or report filed with or examined by such authority pursuant to the Exchange Act or rules and regulations thereunder, be deemed a finding by such authority that such statement or report is true and accurate on its face or that it is not false or misleading.

VI.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendants are liable, on a joint and several basis, for disgorgement of $2,170,589, representing profits gained as a result of the conduct alleged in the Complaint, together with prejudgment interest thereon in the amount of $601,886, for a total of $2,772,475. Defendants' payment of disgorgement and prejudgment interest shall be deemed satisfied upon the entry of an order requiring Defendant John

1   A. Geringer to pay restitution and/or forfeiture in *United States v. John Geringer*, Crim. No. 12-CR-

2   00888 EJD.

3                                              VII.

4        IT IS FURTHER ORDERED, ADJUDGED AND DECREED that, solely for purposes of

5   exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. § 523, the

6   allegations in the Complaint are true and admitted by Defendants, and further, any debt for

7   disgorgement, prejudgment interest, civil penalty or other amounts due by Defendants under this

8   Judgment or any other judgment, order, consent order, decree or settlement agreement entered in

9   connection with this proceeding, is a debt for the violation by Defendants of the federal securities

10  laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the

11  Bankruptcy Code, 11 U.S.C. § 523(a)(19).

12                                             VIII.

13       IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Consents of Defendant

14  John A. Geringer and GLR Advisors, LLC are incorporated herein with the same force and effect as

15  if fully set forth herein, and that Defendants shall comply with all of the undertakings and agreements

16  set forth therein.

17                                             IX.

18       IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain

19  jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.

20

21                                             X.

22       There being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil

23  Procedure, the Clerk is ordered to enter this Final Judgment forthwith and without further notice.

24  Dated: _____, 2014

25                                    _____

26                                    UNITED STATES DISTRICT JUDGE

27

28